In the Matter of Oliver PLUNKETT Monica Plunkett, Debtor.

Ray J. BELISLE, et al., Plaintiffs,

v.

Oliver PLUNKETT and Monica Plunkett, Defendants.

and Ralph C. ANZIVINO, Trustee, Defendant and Third–Party Plaintiff,

v.

PAN–AM PAVILION–I, a partnership, et al., Third–Party Defendants.

Bankruptcy No. 82–01119.
Adv. No. 82–1329.

United States Bankruptcy Court, E.D. Wisconsin.

June 16, 1988.

Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for Ralph Anzivino.

Fox, Carpenter, O'Neill & Shannon, S.C., Milwaukee, Wis., for James Rutter, Mary Rutter and Thomas P. Shannon.

Schmidt & Zodrow, Ltd., Milwaukee, Wis., for other third-party defendants.

Robert Berdan, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for Unsecured Creditors' Committee.

John G. Persa, Milwaukee, Wis., for Stephen R. Sazama and Morris Katz.

Steven M. Epstein, Milwaukee, Wis., for Michael J. Marinelle.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

Plaintiffs filed this adversary on October 12, 1982, seeking an order directing the trustee to execute and deliver to them an assignment and conveyance of a leasehold estate[1] (the "leasehold") in the United

---

1. The leasehold is more fully described as:
   Leasehold estate in No. 39 Strand Street, Town of Christiansted, St. Croix, U.S. Virgin Islands.

Being the same Property subject to a ground lease dated April 21, 1965 from recorded in the Office of the Register of Deeds, St. Croix, U.S. Virgin Islands, Page 385, as amended by

States Virgin Islands. The bases for their request were that the leasehold was partnership property rather than estate property or, alternatively, that Plunkett and later the trustee, held the leasehold subject to a constructive trust because Oliver Plunkett (Plunkett) acquired the property by fraud.

The trustee filed his answer and cross-complaint on November 22, 1982, and alleged that as of the petition date, Plunkett held legal title to the leasehold in his individual name and that plaintiffs' interests were avoidable pursuant to 11 U.S.C. § 544(a)(3). On December 23, 1982, the trustee filed a third-party complaint, reiterating the assertion in his cross complaint, but naming additional parties in interest in response to the plaintiffs' defense that indispensable parties had not been joined.

The third-party defendants [2] answered on February 4, 1983, and counterclaimed requesting the Court to find that the balance due on a loan [3], received by Plunkett and secured by the leasehold and alleged partnership cash, may be set-off from any sums received by the trustee as a result of the continuing interests the trustee claims in the partnerships. This matter is now before the Court on cross motions for summary judgment supported by stipulated facts and supplemental affidavits.

## FACTS

In 1965 W.O.F. Corporation acquired from Joseph Alexander a 50–year leasehold interest in the Pan–Am Pavilion–I ("Pan–Am"), a shopping center complex located in Christiansted, St. Croix, United States Virgin Islands. Subsequently, W.O.F. Corporation assigned its leasehold interest in Pan–Am to W.O.F. Associates. By an agreement dated March 2, 1979, W.O.F. sold its interest in Pan–Am to Plunkett for $1,200,000. (Stipulation, Exhibit 1.) On that date, fee title to Pan–Am was in David

Lieberman and Chase Manhattan Bank, Trustees under the will of Joseph Alexander. This purchase contract named Plunkett as purchaser and did not refer to any other interests or persons as purchasers.

During the spring and summer of 1979, Plunkett and Michael Marinelle formed or attempted to form five partnerships which included in their respective names the terms "Pan–Am" or "Pan–Am Pavilion." Plunkett and Marinelle represented to interested parties that these partnerships were formed to raise capital for the acquisition of the Pan–Am shopping center complex. Five different partnership agreements were executed, although Plunkett treated them as one. They had the same business address; they had the same federal employer's identification number; they filed a "consolidated" partnership tax return; and their partners received Schedule K–1 statements based on that return. Several of the partnership agreements purported to create limited partnerships. However, certificates of limited partnership were not filed in Wisconsin or the Virgin Islands. It also appears that from the time the Pan–Am leasehold was acquired through April 15, 1982, the date Plunkett filed his bankruptcy petition, none of the individual partners resided in the Virgin Islands.

W.O.F. Associates conveyed its interest in Pan–Am to Plunkett on October 1, 1979. As part of that transaction Plunkett assumed W.O.F. Associates' $129,166.65 mortgage obligation to First Pennsylvania Bank, executed a mortgage note (Stipulation, Exhibit 2), and an $800,000.00 leasehold mortgage (Stipulation, Exhibit 3), in favor of W.O.F. Associates. Plunkett also tendered W.O.F. $261,495.76 cash, including a prior earnest money deposit of $50,-000. At the closing, $211,495.76 was wire transferred to W.O.F. from an account in

---

instrument of January 14, 1969 and as thereafter assigned by W.O.F. Corporation to W.O.F. Company by instrument dated April 30, 1970, both of which instruments were recorded as attachments to Instrument No. 4589/79 recorded in the Office of the Recorder of Deeds, St. Croix, on October 10, 1979 and as thereafter assigned by instrument dated October 1, 1979 by W.O.F. Associates to Oliver

Plunkett, recorded in the Office of the Recorder of Deeds, St. Croix, U.S. Virgin Islands, on October 10, 1979 at filing No. 4586/79.

**2.** For ease of discussion, the third-party defendants are hereinafter identified as plaintiffs.

**3.** The stated amount of principal and accrued interest due and owing as of December 31, 1981, was $181,446.

First Bank, N.A. in Milwaukee under the name of "Oliver Plunkett & Associates". Some of the deposits to that account had come from the various members of the Pan–Am partnerships.

An assignment of lease, conveying W.O. F. Associates' leasehold interest in Pan–Am, was also executed by W.O.F. Associates and Plunkett on that date. (Stipulation, Exhibit 4.) All these documents were executed by Plunkett without reference to any other person, interest or possible agency relationship.

The assignment of lease was recorded in the Office of the Recorder of Deeds, St. Croix, United States Virgin Islands, on October 10, 1979. The St. Croix office of Lawyers Title Insurance Corporation issued a policy of title insurance to Plunkett dated October 10, 1979, showing that the leasehold title to Pan–Am was vested in Plunkett individually. (Stipulation, Exhibit 5.)

By a letter dated October 2, 1979, First Pennsylvania Bank, N.A. was notified by W.O.F. Associates that it had sold its interest in Pan–Am to Plunkett. (Stipulation, Exhibit 6.) And on October 17, 1979, Plunkett's counsel informed the Estate of Joseph Alexander that W.O.F. Associates' interest in Pan–Am had been sold to Plunkett. (Stipulation, Exhibit 7.)

In correspondence with various members of the Pan–Am partnerships, Plunkett referred to Pan–Am as partnership property. However, in correspondence with tenants of Pan–Am, Plunkett referred to himself as the owner. (Response Brief in Support of Trustee's Cross–Motion for Summary Judgment, Exhibit A, Affidavit of Patricia A. Purtell, Exhibits A–8 to A–24.) Federal and state tax returns filed by Plunkett listed Pan–Am as a partnership asset and reported rentals from and depreciation of Pan–Am as items of partnership income and deductions. Plunkett's personal property bankruptcy schedule, Schedule B–2, listed Plunkett as holding a partnership interest in a Pan–Am partnership. Other property schedules did not list Plunkett as holding a real property interest in Pan–Am.

The Schedule K–1 statements filed by Plunkett or the trustee as part of the Pan–Am partnership tax returns, listed Plunkett's interest in the Pan–Am partnerships' profits or losses during 1979 to 1983 as ranging from 5% to 6.84%. Plunkett's percentage interest in capital during 1979 to 1983 ranged from 0% to 2.04%.

On January 11, 1980 Plunkett executed a collateral assignment of lease in favor of First Pennsylvania Bank, N.A. as security for a $100,000 loan to Plunkett. (Stipulation, Exhibit 8.) This document specifically recites that Plunkett is the sole owner of the leasehold interest in Pan–Am and the sole owner of the landlord's interest in the leases to the Pan–Am tenants. The proceeds of this loan were used by Plunkett to make improvements to property unrelated to the Pan–Am partnerships. On January 21, 1980 the First Pennsylvania Bank recorded the collateral assignment in the Office of the Recorder of Deeds, St. Croix, United States Virgin Islands.

Between October 1, 1979 and April 15, 1982, the petition date, ten tenants executed leases for space in the Pan–Am. (Stipulation, Exhibits 9–18.) The leases contain conflicting information regarding Plunkett's status. Some were executed by Plunkett as an individual and others were executed by him as a representative of Oliver Plunkett & Associates, a sole proprietorship owned by Plunkett. (Response Brief in Support of Trustee's Cross–Motion for Summary Judgment, Exhibit A, Affidavit of Patricia A. Purtell.) Leases executed by Plunkett did not consistently identify to whom and where rents were to be paid. The rents were payable to Plunkett (Stipulation, Exhibits 14–17), to Oliver Plunkett & Associates (Stipulation, Exhibits 12, 13 & 18), or to Pan–Am (Reply Brief in Support of Plaintiffs' Motion for Summary Judgment, Affidavits of Anne Cartruccio and Maggie Collins), which was an account in Plunkett's name at First Pennsylvania Bank in Christiansted, St. Croix. (Response Brief in Support of Trustee's Cross–Motion for Summary Judgment, Exhibit B, Affidavit of Laurence P. Wielgos.)

On the petition date all tenants of Pan–Am occupied their premises pursuant to leases signed by Plunkett or his predeces-

sor W.O.F. Associates and the record title to Pan–Am was as follows:

*Fee Title:* David Lieberman and Chase Manhattan Bank, Trustees under the Will of Joseph Alexander

*Leasehold Title:* Oliver Plunkett

*Mortgage and/or Security Encumbrances:* a) Leasehold mortgage from Oliver Plunkett to W.O.F. Associates

b) Collateral assignment of lease from Oliver Plunkett to First Pennsylvania Bank, N.A.

## DISCUSSION

The central issue presented in these cross-motions for summary judgment is whether 11 U.S.C. § 544(a)(3) permits Plunkett's Chapter 11 trustee to avoid a constructive trust[4] on his leasehold interest in the Pan–Am shopping center. Resolution of this issue is dependent on whether 11 U.S.C. § 541(d) limits a trustee's avoiding powers under § 544(a)(3). However,

[t]he difficulty with a constructive trust theory is, of course, that the "trust" is neither a trust nor constructive, but is a device created by the court to prevent injustice. It has the effect in bankruptcy, if applied, of preferring one creditor over another on the basis of equitable principles. The same equitable principles, however, dictate that in bankruptcy all unsecured creditors be treated essentially alike.

*D & F Petroleum v. Cascade Oil Company, Inc. (In re Cascade Oil Company, Inc.),* 65 B.R. 35, 40 (Bankr. D.Kan.1986) (citations omitted).

---

**4.** The trustee disputes the existence of a constructive trust, though for purposes of the summary judgment motions and this decision, it is assumed to have existed prepetition.

**5.** 11 U.S.C. § 550 states in part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

Section 544(a)(3) cloaks a bankruptcy trustee with the status of a bona fide purchaser of real estate from the debtor as of the filing of the petition by providing:

[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ... a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

▇ Successful use of the strong arm power allows a trustee to use § 550[5] or § 551[6] of the Bankruptcy Code to preserve or recover the affected property for the benefit of the bankruptcy estate. Here, however, the plaintiffs contend that § 544(a)(3) is unavailing because there was no transferee from whom the trustee can recover the property under § 550.

▇ The plaintiffs have missed the mark. According to the majority view of constructive trusts, which appears to be followed in the Virgin Islands, a constructive trust arises when a party engages in conduct which would result in unjust enrichment.[7] Assuming that this equitable

---

**6.** 11 U.S.C. § 551 states:

Any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate only with respect to property of the estate.

**7.** There is an apparent split of authority as to when a constructive trust arises. The majority view holds that a constructive trust arises when the facts giving rise to fraud, undue influence, etc., occur. The minority view is that a constructive trust arises only at the time a court declares it to exist. *See,* Annotation, *Imposition of a Constructive Trust in Property Bought with Stolen or Embezzled Funds,* 38 A.L.R.3d 1354, 1359 (1971); A. Scott, *The Law of Trusts* § 462.4 (3d ed. 1967); G. Gleason Bogert & G. Taylor

remedy is applicable to the case at bar, Plunkett held the Pan–Am leasehold in trust for the benefit of the plaintiffs because he used their money to purchase the property. This view is consistent with § 160 of Restatement of Restitution which states that: "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." [8] Under the foregoing rule Plunkett would be duty bound to convey the leasehold to plaintiffs. In other words, Plunkett was under an obligation as constructive trustee to turn the leasehold over to the plaintiffs as trust beneficiaries.

█ Under § 544(a)(3) the trustee, as a hypothetical bona fide purchaser of real property, may avoid any obligation incurred by the debtor regardless of whether a transfer has occurred. In this case, Plunkett had an obligation to convey the leasehold to the plaintiffs. This court is satisfied that that obligation may be avoided by the trustee under § 544(a)(3).

█ However, if, as the plaintiffs contend, a transfer is necessary for a trustee invoking § 544(a)(3), to recover property under § 550, the required transfer has occurred. Section 101(50) [9] defines transfer to include every mode of indirectly disposing of or parting with an interest in property. That being so, the actions which gave rise to the constructive trust effectuated a transfer by disposing of Plunkett's equitable interest in the leasehold. Therefore, even under the plaintiffs' construction of § 544, the trustee may avoid the interests of the plaintiffs in the leasehold and bring them into the estate under §§ 550 and 541(a)(3). [10]

█ This brings us to the issue of whether § 541(d) [11] is a general limitation on a trustee's avoiding powers under § 544(a)(3). The plaintiffs argue that because Plunkett held the leasehold subject to a constructive trust, only the legal title to the leasehold and not the equitable interest is property of the estate. From this premise the plaintiffs conclude that the trustee is required to turnover the leasehold to them.

The plaintiffs also suggest a conflict between § 541(d) and § 544(a)(3) which prevents the trustee from invoking § 544(a)(3). This court disagrees with that conclusion.

Bogert, *The Law of Trusts and Trustees* § 472 (Rev. 2d ed. 1978). Both the Virgin Islands and Wisconsin appear to embrace the majority view. *Francois v. Francois,* 599 F.2d 1286 (3rd Cir. 1979); *Wilharms v. Wilharms,* 93 Wis.2d 671, 287 N.W.2d 779 (1980).

8. The parties apparently agree that Virgin Islands law applies. Since there is no statute dealing with constructive trusts, the Restatement applies by virtue of V.I. Code Ann. tit. 1, § 4 (1967), which states:
  The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

9. 11 U.S.C. § 101(50) states:
  "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;....

10. 11 U.S.C. § 541(a)(3) states:
  (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
  .   .   .   .
  (3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

11. 11 U.S.C. § 541(d) states:
  Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, become property of the estate under subsection (a) (1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Where possible, perceived conflicts between related statutes should be reconciled in accordance with basic principles of statutory construction in order to give effect to all provisions of the statutes. 2A N. Singer, Sutherland Statutory Construction §§ 51.02 and 51.05 (Sands 4th ed. rev. 1984). This process begins by examining the language of the statute. *Id.* at § 47.01. However, in instances where statutory language is ambiguous, statutory interpretation usually continues by referring to legislative history. *Id.* at § 48.01.

Section 541(d) begins by reiterating what is already clearly stated in § 541(a), i.e., property of the estate includes bare legal interests held by a debtor as of the commencement of a bankruptcy case. It then uses a secondary mortgage market example to help describe the circumstances where the statute would apply. Unfortunately this language is of limited value in determining the intended scope of the statute. Consequently, it was necessary to examine the statute's legislative history. According to Senate Report No. 989, regarding the Bankruptcy Reform Act of 1978, § 541(e), the forerunner of § 541(d), was designed to preserve the manner in which secondary mortgage market transactions were treated under the old Bankruptcy Act. The report states:

Section 541(e) confirms the current status under the Bankruptcy Act of bona fide secondary mortgage market transactions as the purchase and sale of assets. Mortgages or interests in mortgages sold in the secondary market should not be considered as part of the debtor's estate. To permit the efficient servicing of mortgages or interests in mortgages the seller often retains the original mortgage notes and related documents, and the purchaser records under State recording statutes the purchaser's ownership of the mortgages or interest in mortgages purchased. Section 541(e) makes clear that the seller's retention of the mortgage documents and the purchaser's decision not to record do not impair the asset sale character of secondary mortgage market transactions. The committee notes that in secondary mortgage

market transactions the parties may characterize their relationship as one of trust, agency, or independent contractor. The characterization adopted by the parties should not affect the statutes in bankruptcy of bona fide secondary mortgage market purchases and sales.

S. Rep. No. 989, 95th Cong., 2d Sess. 83–84 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5869–70.

Remarks by Senator DeConcini reiterated this by stating:

The purpose of section 541(d) as applied to the secondary mortgage market is identical to the purpose of section 541(e) of the Senate amendment and section 541(d) will accomplish the same result as would have been accomplished by section 541(e). Even if a mortgage seller retains for purposes of servicing legal title to mortgages or interest in mortgages sold in the secondary mortgage market, the trustee would be required by section 541(d) to turn over the mortgages or interest in mortgages to the purchaser of those mortgages.

The seller of mortgages in the secondary mortgage market will often retain the original mortgage notes and related documents and the seller will not endorse the notes to reflect the sale to the purchaser. Similarly, the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under State recording statutes. These facts are irrelevant and the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the trustee's obligation to turn the mortgages or interests in mortgages over to the purchaser. The application of section 541(d) to secondary mortgage market transactions will not be affected by the terms of the servicing agreement between the mortgage servicer and the purchaser of the mortgages. Under section 541(d), the trustee is required to recognize the purchaser's title to the mortgages or interest in mortgages and to turn this property over to the purchaser. It makes no difference whether the servicer and the purchaser

characterize their relationship as one of trust, agency, or independent contractor.

The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interest in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

124 Cong.Rec. 33,999 (1978).

From the legislative history, it is apparent that during drafting of § 541(d), Congress' sole concern was secondary mortgage market transactions. Hence, § 541(d) should be limited in application to that area. To hold otherwise would make § 541(d) redundant and mere surplusage. As Senator DeConcini stated:

section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate.

124 Cong.Rec. 33,999 (1978).

In making the preceding determination, this court agrees with the majority of courts which hold that § 544(a) and § 541(d) operate independently, *See, e.g., Cascade,* 65 B.R. 35; *Clark v. Kahn (In re Dlott),* 43 B.R. 789 (Bankr. D.Mass.1983); *Loup v. Great Plains Western Ranch Company, Inc. (In re Great Plains Western Ranch Company, Inc.),* 38 B.R. 899 (Bankr. C.D.Cal.1984); *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995 (Bankr. M.D.Tenn.1983); *Elin v. Busche (In re Elin),* 20 B.R. 1012 (Bankr. D.N.J. 1982) *aff'd.* 707 F.2d 1400 (3rd Cir.1983), and disagrees with those cases which hold that § 541(d) is a general limitation on the trustee's powers under § 544(a). *See, e.g., Vineyard v. McKenzie (In re Quality Hol-*

*stein Leasing),* 752 F.2d 1009 (5th Cir. 1985); *Cook v. United States (In re Earl Roggenbuck Farms, Inc.),* 51 B.R. 913 (Bankr. E.D.Mich.1985).

This court found the history of the strong arm clause in *In re Great Plains Western Ranch Co., Inc.* to be especially enlightening. There the court observed:

The trustee's powers under § 544(a), like his rights under Section 541, are derivative. But they derive from a different source. Under Section 541, his rights are derivative from the rights of the debtor. Under the predecessors of Section 544(a), his rights were derivative from the rights of creditors. The substance of this provision [Bankruptcy Act of 1898 § 70c] was carried over into the Bankruptcy Act of 1978. With respect to personal property, it makes sense to dovetail the rights of the trustee with the rights of creditors, because the most relevant state property law is in the Uniform Commercial Code, which builds its priority scheme primarily on the rights of creditors. But the law of real property is built around the recording acts. And recording acts frequently speak not of the rights of creditors, but rather of the rights of bona fide purchasers. Hence, the 1978 Code added a new provision to the strong-arm clause in Section 544(a)(3). It provides that the trustee shall have the powers of a hypothetical bona fide purchaser of real property. He is limited as a prospective bona fide purchaser would be limited. But he takes free of competing interests of which a bona fide purchaser would take free. The trustee exercises that power without regard to his own actual knowledge.

*Great Plains,* 38 B.R. at 905. (citations omitted).

The most recent case addressing the § 541(d)/§ 544(a) tension is that of *City National Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699 (11th Cir.1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988). There, the Eleventh Circuit was determining "whether an ideal creditor

would prevail over a constructive trust beneficiary under Florida law." *Id.* at 706. The court resolved the issue by ruling "that for purposes of priority in bankruptcy a constructive trust beneficiary should have the same rights to the trust assets that a beneficiary of an express trust would have." *Id.* The court added that "[a]n express trust beneficiary clearly has priority to trust assets over a judicial lienholder or execution creditor." *Id.* (footnote omitted). Nevertheless, the court added that "a constructive trust beneficiary prevails over all subsequent takers of the trust property except bona fide purchasers." [12] *Id.* at 707. (citation omitted).

■ The plaintiffs' final contention is that the trustee cannot qualify as a bona fide purchaser under § 544(a)(3) because he had constructive notice of their interests in the leasehold. In support of this position, the plaintiffs argue that the trustee was bound to inquire of Plunkett and/or the Pan–Am tenants regarding the tenants' interests in the property and the identities of the parties receiving rent. They submit that on inquiry Plunkett would have informed the trustee that the Pan–Am Pavilion Partnership owned the leasehold and that the tenants would have said that rental payments were "generally" made to the "Pan–Am Pavilion." (Reply Brief in Support of Plaintiffs' Motion for Summary Judgment at 4–5.)

Section 544(a)(3) makes a trustee's knowledge irrelevant, even though a trustee is subject to constructive notice as determined under state or other applicable law. *See, e.g., Probasco v. Eads (In re Probasco)*, 839 F.2d 1352 (9th Cir.1988); *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982). In this case, St. Croix, U.S. Virgin Islands, is the situs of the property in question, thereby requiring examination of Virgin Islands' statutes to determine the rights of a bona fide purchaser.

The Virgin Islands' recording statute states that "[e]very conveyance of real property hereafter made within the Virgin Islands which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded." V.I. Code Ann. tit. 28, § 124 (1975). In summary, this statute provides that a purchaser for value who acquires real property and properly records that interest first, without actual or constructive knowledge of prior "secret", unrecorded interests, defeats the earlier unrecorded interests.

Similarly, the Uniform Partnership Act (U.P.A.), as enacted in the Virgin Islands provides that a bona fide purchaser for value who acquires real estate without knowledge of title defects prevails over partners whose interests are not of record. The pertinent statute states:

Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of subsection (a) of section 41 of this title, unless the purchaser or his assignee, is a holder for value, without *knowledge.*

V.I. Code Ann. tit. 26, § 42(c) (1962) (emphasis added). A person has "knowledge" under this section when he not only has actual knowledge, but also when he has knowledge of "other facts as in the circumstances shows bad faith." V.I. Code Ann. tit. 26, § 2(a) (1962).

The plaintiffs apparently failed to perceive the significance of these statutes. First, § 42(c) of the U.P.A., apparently provides that a bona fide purchaser cuts off any possible constructive trust which might otherwise arise from a partner's misconduct. Secondly, the aforementioned Virgin Islands' statutes speak in terms of innocent purchasers without actual knowledge of facts which in the circumstances shows bad

---

**12.** This somewhat confusing decision maybe the result of General Coffee Corp. arguing that a constructive trust is essentially an equitable lien. However, the court rejected that argument, stating that a constructive trust beneficiary has an equitable ownership interest. 828 F.2d at 706.

faith. Yet, in the hypothetical sale addressed by § 544(a)(3), the trustee's actual knowledge is of no significance. The court will give no weight to plaintiffs contention that the trustee should have interrogated Plunkett and the Pan–Am tenants to determine whether there were "secret" interests in the leasehold.

The court finds also that the evidence does not support plaintiffs' constructive notice theory. The Pan–Am leasehold was acquired and recorded in Plunkett's individual name; all tenants occupied their premises pursuant to leases signed by Plunkett or his predecessor; and rent was paid to Plunkett, Plunkett owned entities or accounts traceable to Plunkett. No one else was in possession of the property and no one independent of Plunkett appeared to have an interest in the property. In fact, the evidence supports the trustee's view that tenants believed Plunkett was the sole owner of Pan–Am.

For the foregoing reasons, the plaintiffs' motion for summary judgment must be denied and the trustee's cross motion for summary judgment must be granted.[13]

13. Because the third-party defendants' claimed interests in the Pan–Am leasehold are avoidable by the trustee, they have no interests in the property to support their third-party set-off claim.