**Ray J. BELISLE, et al.,**
**Plaintiffs–Appellants,**

v.

**Oliver PLUNKETT, Monica Plunkett,**
**and Ralph C. Anzivino, Trustee,**
**Defendants–Appellees.**

No. 88–3189.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1989.

Decided June 6, 1989.

Morton J. Schmidt, Schmidt, Martz & Zodrow, Milwaukee, Wis., for plaintiffs-appellants.

Mark L. Metz, Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, Wis., for Ralph C. Anzivino.

Thomas P. Shannon, Fox, Carpenter, O'Neill & Shannon, Morton J. Schmidt, Schmidt, Martz & Zodrow, Peter Blain, Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, Wis., John G. Persa, Fox Point, Wis., for Oliver and Monica Plunkett.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

May the trustee in a bankruptcy case bring into the estate property that the debtor holds in constructive trust for victims of fraud? Oliver Plunkett organized partnerships that provided funds to buy a 50–year leasehold interest in a shopping center, Pan–Am Pavilion in Christiansted, St. Croix, Virgin Islands. Plunkett treated the leasehold as his own—including making a collateral assignment to secure a loan of $100,000 that Plunkett put to personal use. Invoking the strong-arm powers of 11 U.S.C. § 544, the Trustee claimed the status of a bona fide purchaser for value. Both the bankruptcy court, 89 B.R. 776 (Bankr.E.D.Wis.1988), and the district court held that § 544(a)(3) allows the Trustee to claim the leasehold for the estate, leaving the partners to participate as creditors. The partners contend that § 541(d) keeps the leasehold out of the estate and that the Trustee may not employ § 544(a) to fetch into the estate something that § 541(d) excludes.

Stripped of irrelevant detail, the facts are that in March 1979 Plunkett (a real estate entrepreneur operating out of Milwaukee) signed a contract, in his own name, to buy the leasehold from W.O.F. Associates for $1.2 million. Through the spring and summer of 1979 Plunkett formed five partnerships to raise the money for the acquisition. After getting the cash, Plunkett closed the deal in October 1979—in his own name, despite using partnership funds. He recorded the assignment of the leasehold in the St. Croix real estate records, again in his own name. Although Plunkett recognized the partnerships for tax purposes— he reported a share between 5% and 7%— and informed the partners of the income and deductions they should report on their own returns, he dealt with tenants and creditors as if he owned the leasehold.

Plunkett and his wife filed petitions under the Bankruptcy Code in 1982. After the Trustee asserted that the leasehold is an asset of the estate, the partners filed an adversary proceeding, seeking to quiet title in the partnerships. Chief Judge Clevert of the bankruptcy court granted the Trust-ee's motion for summary judgment, and the district judge affirmed on appeal under 28 U.S.C. § 158(a). We have jurisdiction under § 158(d) because the decision is the "final" disposition of an adversary proceeding that would be a stand-alone suit outside of bankruptcy. *In re Sandy Ridge Oil Co.*, 807 F.2d 1332 (7th Cir.1986); *In re Morse Electric Co.*, 805 F.2d 262 (7th Cir. 1986). The partners have filed adversary proceedings against the Trustee personally, contesting his allocation of tax benefits (and detriments) from the leasehold during the administration of the estate, but as these were not consolidated with the quiet title action, they do not affect appellate jurisdiction even though there is some overlap between the actions. Compare *Sandwiches, Inc. v. Wendy's International, Inc.*, 822 F.2d 707, 710 (7th Cir.1987), with *In re Berke*, 837 F.2d 293 (7th Cir.1988).

■ Plunkett bamboozled the partners and used for his own benefit the leasehold acquired with partnership funds. Virgin Islands law impresses a constructive trust on the leasehold and its fruits. A constructive trust ordinarily survives bankruptcy: the property may not be used to satisfy the debtor's obligations to other creditors, and the debts to the victims of the fraud may not be discharged. 11 U.S.C. § 523(a)(2), (4). See *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 nn. 8, 10, 103 S.Ct. 2309, 2313–14 nn. 8, 10, 76 L.Ed.2d 515 (1983); *In re Teltronics, Ltd.*, 649 F.2d 1236, 1239 (7th Cir.1981). The Trustee acknowledges all of this but relies on § 544(a)(3):

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— ...
>
> (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the

case, whether or not such a purchaser exists.[1]

A bona fide purchaser of the leasehold interest, without notice of the earlier claim, would take ahead of a person who has not recorded his entitlement. Not only Virgin Islands real estate law, 28 V.I.Code § 124, but also the Uniform Partnership Act, adopted in both the Virgin Islands and Wisconsin, 26 V.I.Code § 42, Wis.Stat. § 178.07(3), provides this. See also *In re Marino*, 813 F.2d 1562, 1565 (9th Cir.1987) (trustee may avoid undisclosed partnership claim against real property under similar California statute). So the Trustee submits that the Plunkett estate includes the Pan–Am leasehold, "as of the commencement of the case", without need for action on his part.[2]

Not so fast!, the partners rejoin. The estate can't contain the leasehold "as of the commencement of the case" because § 541(d) says that it does not contain property in which the debtor holds bare legal title:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the es-

tate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[3]

If this were not enough, the partners continue, § 544(a)(3) speaks of a "transfer", yet Plunkett did not transfer the Pan–Am leasehold, and there is therefore nothing for the Trustee to avoid. As the partners see things, §§ 541(d) and 544(a)(3) allow a trustee to recover property transferred out of the estate before the filing, but not to claim for the estate property held in a constructive trust. Several courts have perceived a "conflict" between § 541(d) and § 544(a)(3). E.g., *In re General Coffee Corp.*, 828 F.2d 699, 704–06 (11th Cir.1987); *In re Quality Holstein Leasing*, 752 F.2d 1009, 1013–14 (5th Cir.1985). The parties ask us to decide which statute prevails. We believe, however, that there is no conflict.

■ Section 544(a)(3) pulls into the debtor's estate property that ostensibly was there all along. Dealing with ostensible ownership is not, however, the statute's objective—at least not its only one—because the benefits are not limited to those who relied on the asset in extending credit. Section 544(a)(3) complements §§ 544(a)(1) and (2), which give the trustee the status of a judgment creditor vis-à-vis chattels in the

---

1. The text we have quoted is the original version of § 544(a)(3), in force at the time the Plunketts filed their petition. An amendment in 1984 changed it to read: "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists." The parties do not contend that this change makes a difference.

2. The Virgin Islands has a race-notice rule, and constructive notice on the part of the purchaser would allow the holder of the unrecorded interest to prevail. Although § 544(a) specifies that the trustee shall be treated as a person without *actual* notice, if any purchaser from the debtor would have had *constructive* notice of the claim—that is, would have been charged with realizing the implications of the obvious, even though they did not set off alarms at the time—

then the trustee loses. See *McCannon v. Marston*, 679 F.2d 13, 16–17 (3d Cir.1982). Virgin Islands law charges buyers with constructive notice of what they would have learned from examining the real estate records and interrogating persons in possession. Although the partners contend that any purchaser from Plunkett would have had constructive notice of their ownership, the bankruptcy and district courts held that the record did not create a genuine issue of material fact on that score. Plunkett dealt with the tenants in his own name or that of a proprietorship, so interrogating the tenants would not have disclosed the partnerships' interest. And looking in the real estate records would have been fruitless: Plunkett appeared as the sole owner.

3. Like § 544(a)(3), this section changed in 1984. Congress substituted "under subsection (a)(1) or (2) of this section" for "under subsection (a) of this section". The change does not affect this case.

debtor's possession. If one creditor had (or could get) a judgment effective against the chattels, the trustee secures the same advantage for all—which reduces any creditor's incentive to try to be first in line, a rush that may reduce the value of the debtor's assets. Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 70–79 (1986); cf. Douglas H. Baird, *Notice Filing and the Problem of Ostensible Ownership*, 12 J. Legal Studies 53 (1983). Sections 544(a)(1) and (2) follow state law, however, in giving the trustee no *greater* rights than the judgment creditor would have. If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not we say that the debtor holds the ring in "constructive trust" for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under most states' laws, however, the buyer in good faith of *real* property can obtain a position superior to that of the rightful owner, if the owner neglected to record his interest in the filing system. Section 544(a)(3) gives the trustee the same sort of position.

A bona fide purchaser from Plunkett would have taken ahead of the partners under local law. They neglected to record the partnerships' interest, though recording is easy. (The partners could, and in retrospect should, have refused to invest funds except through an escrow agent, who would have held the cash until good title had been recorded in the partnerships' names.) One of Plunkett's creditors, extending $100,000 against a collateral assignment of the leasehold, actually obtained a position superior to that of the partners. The Trustee claimed the same position for the estate (meaning the creditors collectively, including the partners).

Nothing in the text or function of § 544(a)(3) makes the force of this claim turn on whether Plunkett once owned the leasehold and then sold it to the partnerships (but failed to record their interest) or whether, instead, Plunkett acquired the leasehold through the partnerships. The sequence W.O.F. to Plunkett (perhaps with a bridge loan) to Pan–Am partnerships, with Plunkett retaining ostensible ownership, is identical in every respect to the sequence W.O.F. to Pan–Am partnerships to Plunkett, with Plunkett obtaining ostensible ownership. Identical from the perspective of Plunkett, of the partners, and of Plunkett's (other) creditors—and identical from the perspective of § 544(a)(3). Section 544(a)(3) allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a "transfer" by the debtor cannot be a necessary condition of the exercise of the strong-arm power. The statute mentions "transfer" only in the sense of the *hypothetical* transfer that measures the trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the "true" owner's rights, then the trustee takes ahead of the true owner.

Section 541(d) does not have anything to say about the effects of § 544(a)(3). It forbids including property in the debtor's estate "under subsection (a) of this section" and does not address whether property may be included under some other part of the Code. The courts that have perceived a conflict between §§ 541(d) and 544(a)(3) did not discuss this limitation on the domain of § 541(d). Moreover, even if we confine attention to the estate defined by § 541(a), § 541(d) carves out only "an equitable interest in such property that the debtor does not hold." This could mean, as the partners treat it, "an equitable *interest* ... that the debtor does not hold" (here, because subject to constructive trust), but perhaps the statute addresses "*property* that the debtor does not hold", on which, therefore, lenders were unlikely to rely in extending credit. If read to exclude any "equitable interest ... that the debtor does not hold", the statute would remove from the estate even the Plunketts' house, if it had been mortgaged to secure a loan. Estates commonly include such property.

Section 541(d) was designed, its text and history reveal, to deal with persons with title to property who had sold the equitable

interests. E.g., S.Rep. 95–989, 95th Cong., 2d Sess. 83–84 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5869, 5870. This is a common arrangement in secondary mortgage markets: a person with many titles sells certificates representing shares in the pool of income generated by the notes. Section 541(d) ensures that the creditors of the service corporation stand in line behind the owners of the income stream. The bankruptcy court thought that because the legislative history speaks only of secondary mortgage markets, § 541(d) is limited to such cases. 89 B.R. at 782–83. Legislative history does not carry so much force. Mortgage markets may have been the impetus for § 541(d), but statutes often create rules that reach beyond the immediate concerns that spawned them. "It is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history". *Pittston Coal Group v. Sebben,* —— U.S. ——, 109 S.Ct. 414, 420–21, 102 L.Ed. 2d 408 (1988). Section 541(d)'s genesis helps us understand, however, that reading the law as limited to inclusions in the estate under § 541(a) makes legal as well as linguistic sense. See *In re Auto–Train Corp.,* 810 F.2d 270, 273 (D.C.Cir.1987).

Although our reading of § 541(d) and § 544(a)(3) does not conflict with the holding of any other court of appeals, there is some tension between the course we believe appropriate and statements in other opinions. The Fifth Circuit said in *Quality Holstein Leasing,* 752 F.2d at 1013 (note omitted) that "[a]s a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers.... Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." With all respect to the Fifth Circuit, we believe that allowing the estate to "benefit from property that the debtor did not own" is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title. The estate gets what the debtor could *convey* under local law rather than only what the debtor *owned* under local law—a critical distinction that the Fifth Circuit did not mention. The discussion of § 541(d) in *Quality Holstein Leasing* is dictum, however, because the court held that state law did not impress a constructive trust on the property, and the trustee prevailed under § 544(a)(3).

The Eleventh Circuit took a course opposite to that of the Fifth. It said in *General Coffee,* 828 F.2d at 704, "that § 544(a) would bring the [constructive] trust property into the estate in spite of § 541(d)." But having proclaimed the supremacy of the strong-arm power, the court retreated to neutrality, 828 F.2d at 705–06, and then held that a bona fide purchaser for value would not have defeated the interest in question under state law. So in *Quality Holstein Leasing,* which proclaimed the supremacy of § 541(d), the trustee won, and in *General Coffee,* which treated § 544(a) as the victor, the trustee lost. For the reasons already canvassed, we believe that both the Fifth and Eleventh Circuits got off on the wrong foot by finding a "conflict" in need of resolution.

Section 544(a)(3) gives the Trustee the status of a bona fide purchaser for value. The bankruptcy and district courts reached the same conclusion. The partners' remaining contentions were waived or are insubstantial, so the judgment is

A<small>FFIRMED</small>.