### In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court, S.D. New York.

Sept. 20, 1989.

Leon C. Baker, White Plains, N.Y., Christy & Viener, New York City, for debtor and defendants.

Zubres, D'Agostino & Hoblock, P.C., Albany, N.Y., for Latham Sparrowbush Associates.

## DECISION ON MOTION FOR REARGUMENT ON RULE 9011 MOTIONS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Leon Baker has moved for reargument with respect to this court's decision on August 11, 1989, 103 B.R. 480, granting LSA's motion for sanctions under Bankruptcy Rule 9011 and 28 U.S.C. § 1927.

Baker has asserted that certain factual errors were made and should be corrected and that the decision imposing sanctions should be withdrawn. Baker refers to pages 480, 481 and 482 of this court's August 11, 1989 decision, and states that Leon C. Baker and his wife, Gloria Baker, personally, and not as trustees of the Coleman Capital Corporation Employee's Profit Sharing Trust, as noted in the decision, are the mortgagees of the Cohoes Industrial Terminal, Inc. However, Leon C. Baker and Gloria Baker are the trustees and sole beneficiaries of the Coleman Trust. It is unimportant whether or not the mortgage was owned by the Bakers as trustees or individually. The significant fact is that the mortgage for the industrial terminal property was under Baker's control and that there was no adverse secured claimant asserting any financial pressure against the debtor which would prompt a Chapter 11 filing by the debtor.

On page 480 of the decision it is stated that Baker claimed that the debtor corporation only held nominal title to the leasehold for the Sparrowbush garden apartment buildings pursuant to an unrecorded verbal transaction between Gloria Baker and the corporate debtor, Cohoes Industrial Terminal, Inc. Baker argues that in reality Gloria Baker and the debtor always claimed that the nominee relationship was created by a writing. LSA, the major creditor and owner of the Sparrowbush property, denied this fact. A state court judge in his decision had described the relationship as verbal. Whether verbal or written, the difference is unimportant because the key point is that the alleged nominee relationship was admittedly unrecorded. The filing of a certificate by Gloria Baker doing business as Sparrowbush Apartments does not satisfy the recording requirement that Gloria Baker was the owner of the Sparrowbush lease. Hence, there was no notice to the public that Gloria Baker claimed the leasehold interest in the Sparrowbush lease before the debtor's interest in the Sparrowbush lease was terminated by the state court judgment. Bona fide creditors of the debtor and tenants at the Sparrowbush apartments could look to the debtor and not Gloria Baker with respect to claims arising out of the Sparrowbush lease. Therefore, had the Sparrowbush lease not been terminated by the state court judgment, a trustee in bankruptcy of the debtor could have invoked the so-called strong-arm powers under 11 U.S.C. § 544(a) and voided Gloria Baker's unrecorded leasehold interest. *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.1989).

Baker notes that at page 481–482, this court's August 11, 1989 decision states that the New York Court of Appeals "denied" the debtor's appeal from the order of the Appellate Division, Third Department denying leave to appeal. Baker asserts that the Court of Appeals did not rule on the Appellate Division order denying leave to appeal the Appellate Division's refusal to vacate

the state court default judgment terminating the Sparrowbush lease (which is not appealable). Baker correctly observes that the Court of Appeals dismissed the debtor's separate motion in the Court of Appeals for leave to appeal. This court did not also include the fact that Baker moved unsuccessfully in the Court of Appeals for reargument of the Court of Appeals dismissal of his motion. Apart from all of Baker's procedural skirmishing in the state courts, the essential factor is that under state law, the Sparrowbush lease was terminated before the debtor filed its Chapter 11 petition and the leasehold was not property of the debtor's estate within the meaning of 11 U.S.C. § 541 and thus, could not be considered for purposes of a Chapter 11 plan of reorganization. No reorganization could have preserved the Sparrowbush lease because it was terminated before the Chapter 11 petition was filed. The Chapter 11 petition was filed for the sole purpose of circumventing the state court judgment which previously terminated the Sparrowbush lease and appointed a state court receiver to take possession of the premises for LSA.

Whether or not Baker exhausted his state court remedies is of no moment. On page 482 of the decision, this court said that the debtor "seemingly exhausted the state court remedies with respect to the Sparrowbush lease." The point is that the state court judgment terminating the Sparrowbush lease was final and that the leasehold interest could not be property of the debtor's estate. Therefore, the Chapter 11 petition could not have been filed in good faith because an attorney, after reasonable inquiry, would not have believed that a Chapter 11 petition filed for the sole purpose of preserving the debtor's leasehold interest in the Sparrowbush apartments, was well-grounded in fact and warranted by existing law.

Baker contends that he filed the Chapter 11 case for the debtor for the purpose of collaterally attacking the state court judgment terminating the Sparrowbush Lease. Notwithstanding his lack of success in the state appellate courts, Baker continues to question the state court's jurisdiction over the debtor. The commencement of a bankruptcy case in order to circumvent and collaterally attack a final state court judgment with regard to a leasehold interest which was not property of the debtor's estate, and which Baker claimed was really owned by his nondebtor wife under an unrecorded transaction between the debtor and his wife, is a manifest misuse of the Bankruptcy Court's jurisdiction. The Chapter 11 petition was clearly filed for an improper purpose such as to harass, to cause delay, or to increase the cost of litigation.

Baker's argument that the state court lacked personal jurisdiction over the debtor corporation because LSA served the New York Secretary of State in accordance with New York law is specious. The debtor's argument that such service was not calculated to give the debtor notice of the state court suit was rejected by the state courts. Baker does not deny that LSA served the New York Secretary of State properly. The state appellate court also found that Baker had actual notice of the service of process before the time to answer lapsed. LSA was authorized to commence its state court litigation by serving the New York Secretary of State for the very reason that LSA chose to avoid the possible argument that an appropriate officer of the debtor corporation had not been personally served with process. Under these circumstances, Baker's admitted reason for filing the Chapter 11 case in order to raise a collateral attack on the state court's jurisdiction over the debtor is not well grounded. Baker does not allege that the New York law, which permits service on a corporation by serving the Secretary of state, had not been followed. Nor did Baker attack the constitutionality of the New York Statute which permits service on a corporation by serving the Secretary of State. Therefore, there was no basis for contending that the New York courts lacked personal jurisdiction over the debtor and that such jurisdiction could be collaterally attacked in the Bankruptcy Court after unsuccessfully raising this defense in the state courts.

Baker claims that there is a critical contradiction of facts in this court's August

11, 1989 decision. On page 482 of the decision dated August 11, 1989, the court correctly noted the chronology of facts and states that on October 10, 1986, this court granted the U.S. trustee's motion for the appointment of a Chapter 11 trustee rather than grant the alternative request for a conversion to Chapter 7. On page 488 of the decision it was stated that instead of dismissing the case, the court converted the case for liquidation under Chapter 7 because a Chapter 7 trustee was needed to investigate the debtor's conduct and inquire into the possibility that the debtor may have misappropriated assets. There is no contradiction because the conversion was in response to a subsequent motion made by the U.S. trustee which was granted on December 17, 1987 after Baker had terminated the debtor's leasehold interest at the industrial terminal and when the debtor no longer had any business to operate. Baker argues that the difference is critical because if the case had been improperly brought the court would have dismissed the case on October 10, 1986, rather than putting in a Chapter 11 trustee. This argument ignores the fact that on October 10, 1986 the United States trustee did not move for a dismissal of the case on the ground that it had been commenced in bad faith. Indeed, Baker had not yet terminated the debtor's industrial terminal lease. Although the debtor was then operating a business, it had not complied with the U.S. trustee's request for operating statements and had not filed a plan of reorganization. Hence, a Chapter 11 trustee was required to operate the debtor and to eliminate the various conflicts of interest inherent in the various roles occupied by Baker in this case.

The fact that LSA opposed the U.S. trustee's alternative argument for a dismissal in December of 1987 does not support Baker's argument that LSA agreed that the Chapter 11 case was originally filed in good faith. A dismissal of the Chapter 11 case in December of 1987, rather than the appointment of a Chapter 11 trustee, would have precluded LSA from ascertaining whether or not assets of the debtor had been misappropriated. This fact was sig-

nificant to LSA in December of 1987 because on October 17, 1987, this court had found that LSA was entitled to damages against the debtor in the sum of $838,-724.00. *In re Cohoes Industrial Terminal,* 78 B.R. 681 (Bankr.S.D.N.Y., 1987); *aff'd* 87 Civ. 8919 (S.D.N.Y., May 2, 1988), *aff'd,* 863 F.2d 45 (2d Cir.1988).

Baker argues that the court's statement that the debtor prepaid its winter utility bill to Niagara Mohawk Gas & Electric Company is inaccurate because the debtor paid $35,000.00 as an estimate for the period from September 17, 1986 through November 30, 1986, which was within 3% of the actual costs for that period. Actually, this period might have been described as the fall season rather than the winter bill. However, the critical fact is that the utility bill for heating was prepaid irrespective of whether the period in question involved only the fall and not the entire winter heating season. The amount remains the same.

Similarly, the reference to the fact that the debtor returned prepaid rents to the subtenants at the industrial terminal is disputed by Baker because he argues that they were no longer subtenants of the debtor after Baker terminated the debtor's lease. Therefore, the former subtenants would have no claim against the newly installed Baker controlled entity for the rent which they prepaid to the debtor. The significance of the debtor's return of the prepaid rent is not that the former subtenants could not seek a return from the new lessor, but that the debtor voluntarily reduced its cash resources before the Chapter 7 trustee took control in order to obtain the good will of the former subtenants for the benefit of the newly installed lessor.

Whether or not the Chapter 11 trustee was induced to allow Baker to assert the defense that Gloria Baker was the real owner of the Sparrowbush lease after Gloria Baker assigned the $350,000.00 termination fund to the Chapter 11 trustee, and whether or not the Chapter 11 trustee believed that Gloria Baker was the owner of the Sparrowbush lease are irrelevant points. The fact remains that the state

court dismissed Gloria Baker's suit against LSA for the Sparrowbush lease because she was a legal outsider. Only the debtor had legal title to the Sparrowbush lease and that title was terminated by the state court judgment. The state court termination judgment is *res judicata* for the purpose of the debtor's Chapter 11 case.

Although Gloria Baker may claim that she was the equitable owner of the Sparrowbush lease, she did not file a Chapter 11 petition with this court. The debtor filed the Chapter 11 case after its title to the Sparrowbush lease had been terminated by the state courts and yet it tried to use this court's jurisdiction in order to prevent LSA from enforcing its state court judgment, notwithstanding the fact that the debtor's legal interest in the Sparrowbush lease had been terminated previously.

If Leon Baker reasonably believed that Gloria Baker was the unrecorded equitable owner of the Sparrowbush lease he should not have filed a Chapter 11 petition for the debtor. Gloria Baker could not claim that the debtor obtained the leasehold interest from her as a result of fraud and that a constructive trust should be imposed to protect her interests. Gloria Baker voluntarily permitted the debtor to deal with its tenants and creditors as if the debtor owned the Sparrowbush leasehold. A *bona fide* creditor of the debtor would prevail over Gloria Baker's unrecorded interest. Therefore, had the Sparrowbush lease not been terminated by the state court before the commencement of the Chapter 11 case, the Sparrowbush lease would have been included in the debtor's estate because a trustee occupies the position of a hypothetical *bona fide* creditor or lienor pursuant to 11 U.S.C. § 544(a), even though Gloria Baker did not "transfer" the leasehold to the debtor because the debtor acquired the leasehold directly. *Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.1989). Thus, the debtor's creditors would benefit from property even if Gloria Baker claimed to be the equitable owner. Hence, Gloria Baker's so-called kamikaze defense that she was the equitable owner would not have prevailed as a defense against creditors' claims if the leasehold interest had

been property of the estate. That she was the equitable owner of the Sparrowbush leasehold was even less meritorious in this Chapter 11 case because the leasehold interest never became property of the estate due to the prepetition state court judgment. Therefore, neither the Chapter 11 filing nor the defense that Gloria Baker was the equitable owner of the Sparrowbush lease had merit. Both positions were not well grounded in fact or law and were not supported by any good faith purpose.

There is no inconsistency in the fact that after LSA objected to Leon Baker's position that Gloria Baker was the equitable owner of the Sparrowbush lease, LSA thereafter obtained a state court summary judgment order against Gloria Baker for the damages which LSA successfully proved in this court as a creditor of the debtor. In sustaining the state court summary judgment order against Gloria Baker, the Appellate Division Third Department ruled on August 25, 1989, that Gloria Baker's admitted unrecorded transaction as to the Sparrowbush lease caused her to be liable to LSA for the claim which LSA originally filed against the debtor corporation. It is interesting to note that Baker argued in this court that the doctrines of splitting a cause of action and merger by judgment applied and that these doctrines precluded LSA from using the state court judgment as to the termination of the debtor's interest in the Sparrowbush lease to sustain LSA's claim against the debtor for damages. In LSA's claim against Gloria Baker as the admitted equitable owner and principal of the Sparrowbush lease, Leon Baker argued that the doctrine of *res judicata* and prohibitions against splitting a cause of action did *not* apply and that Gloria Baker was not bound by this court's previous conclusion that Gloria Baker was at most an undisclosed and unrecorded principal with respect to the Sparrow lease, which had been taken in the debtor's name. Thus, notwithstanding the Bakers' opposition to the application of the doctrines of merger by judgment and prohibition against splitting causes of action, both of which they unsuccessfully urged in this

court, the Appellate Court sustained the state court summary judgment against Gloria Baker on the ground that this court's judgment in favor of LSA against the debtor was not *res judicata* nor did it prohibit a later action by LSA against Gloria Baker as a co-obligor under the Sparrowbush lease. The Appellate Division concluded that Gloria Baker's admissions in the Bankruptcy Court that she was the equitable owner of the Sparrowbush lease caused her to be liable to LSA for the damages which LSA proved against the debtor in this court. The Appellate Division stated in relevant portion as follows:

> The question remains whether summary judgment was properly granted in plaintiff's favor against the Bakers. Plaintiff's complaint is premised, in part, on the assertion that Gloria Baker acted as an undisclosed principal and thus stands personally liable under the lease (*see*, Restatement [Second] of Judgments § 49, comment [c] [1982]; 3 NYJur2d, Agency, § 305). While a subsequent action against a co-obligor is not prohibited under merger principles, the first judgment is not *res judicata* (emphasis added) as against the individual assets of the co-obligor (*see*, CPLR 1501, 1502, 3002[b]; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1502:1, at 398–399). The Bakers, however, have admitted the facts as determined by Bankruptcy Court. In rejecting Cohoes' defense that it merely acted as Gloria Baker's nominee, Bankruptcy Court essentially characterized Gloria Baker as an undisclosed principal. This factual assessment, coupled with the Bakers' repeated admissions throughout the history of this dispute that Cohoes served as their nominee, provides adequate basis to confirm Gloria Baker's personal liability as a matter of law. This conclusion is not inconsistent with that of Bankruptcy Court since the failure to timely disclose Gloria Baker's status relative to Cohoes rendered both potentially liable under the lease (*see*, 3 NYJur2d, Agency, § 306, at 122–123). As such, Supreme Court properly awarded summary judgment as against her,

together with interest at the statutory rate (*see*, CPLR 5001).

*Latham Sparrowbush Associates v. Shaker Estates, Inc. and Leon C. Baker, et al.,* 545 N.Y.S.2d 219 (1989). Hence, the Appellate Division found no inconsistency between the judgment against Gloria Baker as to her personal liability and this court's earlier judgment sustaining LSA's claim for damages under the lease against the corporate debtor. Notwithstanding Baker's argument that the Appellate Division's decision on August 25, 1989, is contrary to this court's Rule 9011 decision on August 11, 1989, there is no inconsistency. This court found LSA to be a creditor of the debtor, whereas the state court found that Gloria Baker's repeated admissions that she was the equitable owner of the Sparrowbush lease were sufficient also to cause her to be personally liable to LSA as a co-obligor.

In sum, Leon Baker's legal maneuvers in the state courts and this court were insufficient to create any color of legal substance to the arguments that the Chapter 11 case which he filed for the debtor could preserve for the debtor the previously terminated Sparrowbush lease, or that he could collaterally attack in the Bankruptcy Court the state court's jurisdiction over the debtor by LSA's service of process on the New York Secretary of State when this issue was previously rejected by the state courts.

Baker also argues that the debtor had valid grounds for filing a Chapter 11 petition, apart from the Sparrowbush lease which it lost before the Chapter 11 case was commenced. Baker notes that the debtor's other leasehold interest was the Cohoes Industrial Terminal and that the terminal lost its major tenant, which occupied 40% of the rentable space. Baker omits the fact that he stipulated with the major tenant to let it out of its lease in exchange for a payment of $500,000.00, which was not included as an asset in the Chapter 11 case. Baker points out that the remaining rental income from the other subtenants of the terminal was barely enough to cover physical operating costs not including rent owed to the landlord (a

Baker-controlled entity), insurance and real estate taxes. In addition Baker notes that the debtor was obliged to build a sewer connection at the terminal which cost $135,-000.00. This argument ignores the fact that the landlord was a Baker-controlled entity and that Leon and Gloria Baker were the mortgagees for the premises. Leon Baker terminated the debtor's lease at the industrial terminal as soon as it appeared that the debtor would be converted to Chapter 7 for its failure to propose or effect a Chapter 11 reorganization. Thus, Leon Baker aborted the debtor's interest in the terminal in order to withdraw the industrial terminal operations from the aegis of the Bankruptcy Court and not because of financial pressure on the debtor. The substituted Baker-controlled entity which Leon Baker installed as a tenant at the industrial terminal in place of the debtor faced the same economic conditions at the terminal as did the debtor before Leon Baker terminated its lease. The newly installed Baker entity is able to function economically without the protection of Chapter 11 because the Chapter 11 reorganization was employed by Baker solely to circumvent the state court judgment which terminated the Sparrowbush lease and not because financial pressures compelled the commencement of the debtor's Chapter 11 case.

In sum, Baker filed the Chapter 11 case for an improper purpose in order to preserve the Sparrowbush lease and litigated the issue that his wife was the equitable owner of the Sparrowbush lease despite the fact that the state courts had already concluded that the Sparrowbush lease had been terminated and that Gloria Baker was a legal outsider.

Even if the state court judgment had not terminated the Sparrowbush lease, there would have been no reasonable basis for litigating in this court that Gloria Baker was the equitable owner of the lease because her unrecorded interest could not have barred the creditors and a trustee in bankruptcy under 11 U.S.C. § 544(a) from including the lease as property of the debtor's estate. Baker was apprised of this point by the court when he proposed to transfer the debtor's interest in the Sparrowbush lease to Gloria Baker in order to relitigate the termination of the Sparrowbush lease. Despite this *sua sponte* statement by this court, Baker chose to reassert this issue as a defense to LSA's claim for damages and continues to maintain that the debtor's purpose in filing the Chapter 11 petition is irrelevant with respect to LSA's motion for sanctions.

For the foregoing reasons it is patently clear that Baker had absolutely no chance of successfully including the terminated Sparrowbush lease in the debtor's Chapter 11 reorganization and that the defense to LSA's claim that Gloria Baker was the equitable owner of the Sparrowbush lease also had no chance of success.

> [W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 [Bankruptcy Rule 9011] has been violated.

*Eastway Construction Corp. v. The City of New York,* 762 F.2d 243 at 254 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Therefore, Baker's motion for reargument of this court's ruling which imposed sanctions is denied.

LSA has cross-moved for additional sanctions in the amount of $2000.00 for having to prepare and oppose Baker's motion for reargument. Baker's motion for reargument was made for a legitimate purpose. Evidently he believed that the alleged factual errors which he sought to correct would sustain a reargument motion. Although Baker assumed that he could reargue his case without complying with local Rule 13(j), which requires leave of the court, there will be no additional sanctions imposed because of the reargument motion. LSA's cross-motion for additional sanctions is denied.

IT IS SO ORDERED.