**In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.**

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court, S.D. New York.

Feb. 6, 1987.

Leon C. Baker, White Plains, N.Y., for debtor.

Zubres, D'Agostino & Hoblock, P.C., Albany, N.Y. (David M. Siegal and Pamela A. McMahon, of counsel), for Latham Sparrowbush Associates.

Kissam & Halpin, New York City (John F. Scheffel, of counsel), for trustee.

## DECISION ON OBJECTION TO CLAIM OF LATHAM SPARROWBUSH ASSOCIATES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 trustee of Cohoes Industrial Terminal, Inc., the debtor in this case, invokes Bankruptcy Rule 3007 and objects to the claim of Latham Sparrowbush Associates ("LSA"), the debtor's former lessor. LSA has filed a claim against the debtor in the total sum of $2,504,255.70, arising out of a written lease between LSA and the debtor with respect to an apartment complex known as Sparrowbush Apartments, located in Albany County, New York (the "lease").

LSA, as owner of the fee of Sparrowbush Apartments, has recovered the leasehold pursuant to an option in the lease which gave LSA the right to reacquire the leasehold in exchange for a $350,000 payment to the debtor. LSA's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to regain possession of the apartment complex was granted by this court. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.), *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), (Brieant, C.J.).

### STATE COURT LITIGATION

LSA's state court complaint was titled as an action for specific performance. It sought a declaratory judgment that the termination clause in the lease was valid and enforceable and an order directing the debtor to deliver possession of the premises to LSA in exchange for LSA's tender of the $350,000 termination payment required under the lease. The debtor had disputed the validity of the termination clause on the ground that it violated the rule against perpetuities.

On April 15, 1985, an order and default judgment was signed by Justice Lawrence E. Kahn of the New York Supreme Court, which:

(1) held that Article 32 of the Lease (the termination clause) was valid and enforceable;

(2) directed the debtor to deliver possession of the premises to LSA: and

(3) ordered that upon delivery of possession, LSA should tender to the debtor a certified check for $350,000.

The debtor moved to vacate the default judgment on the ground that it had not received a copy of the summons and complaint from the New York Secretary of State because the debtor had failed to designate a replacement for the original agent for service of process, who had died some years before. Mr. Justice Kahn denied the debtor's motion to vacate LSA's default judgment. The Appellate Division affirmed Justice Kahn's denial of the debtor's motion to vacate the default judgment and thereafter denied the debtor permission to appeal to the New York Court of Appeals. The New York Court of Appeals subsequently denied the debtor's appeal from the Appellate Division's order denying it leave to appeal. The debtor's motion in the New York Court of Appeals for reargument was also denied.

## LSA's PROOF OF CLAIM

In paragraphs 3(a) and 4(a) of its proof of claim, LSA seeks $162,390.70, together with accrued interest to the date of the petition for additional contingent rent and additional bonus rent pursuant to an amended lease dated August 27, 1975, for the period from September 1, 1975 through February 25, 1985.

Paragraphs 3(b) and 4(b) of LSA's proof of claim demand $1,300,000, together with accrued interest, on the ground that the lease agreement required the debtor at its sole cost and expense to take good care of the leased premises. LSA contends that the debtor breached this duty and also committed waste.

Paragraphs 3(c) and 4(c) seek $1,040,000 for the debtor's use and occupancy of the leased premises for periods commencing after February 25, 1985, the effective date of LSA's termination of the lease.

LSA seeks $1,750 in paragraphs 3(d) and 4(d) of its proof of claim for filing fees which it paid to the American Arbitration Association with regard to a portion of its contingent rent claim.

In paragraphs 3(e) and 4(e) of its proof of claim, LSA demands the $115, together with accrued interest, pursuant to the judgment which was entered by the New York Supreme Court on April 18, 1985 in favor of LSA and against the debtor.

## THE DEBTOR'S FIRST OBJECTION

The debtor's first objection to LSA's proof of claim is that all of the claims arising out of the lease were merged into the default judgment which LSA obtained against the debtor for specific performance of the option in the lease to reacquire or terminate the leasehold. The debtor argues that LSA may not split a cause of action and, therefore, all claims arising out of breaches of the lease which had accrued at the time LSA commenced its state court action on February 13, 1985, should have been sued on in that action. Therefore, the debtor maintains that any accrued claim which LSA did not assert in that action is now barred by the default judgment in favor of LSA which was entered in the New York Supreme Court on April 18, 1985. This position is bottomed on various theories, such as merger by judgment, prohibition against splitting a cause of action and the rule of discharge by adjudication.

## THE DEBTOR'S SECOND OBJECTION— THE KAMIKAZE DEFENSE

The debtor's second objection is that it cannot be liable to LSA because the debtor was allegedly a nominee and the agent of a disclosed principal, namely, Gloria Baker, and that an agent may not be personally liable for acts performed within the agent's apparent scope of authority. This objection is based upon a contention that the debtor held bare legal title to the Sparrowbush leasehold as a nominee and agent for Gloria Baker, who was really the beneficial owner of the leasehold pursuant to an unrecorded verbal transaction between Glo-

ria Baker and the debtor. This objection is in reality a suicide defense which would extinguish the debtor's interest in the right to receive the $350,000 termination payment which LSA delivered pursuant to the terms of Article 32 of the lease. Before the Chapter 11 trustee was appointed, and at a time when Leon Baker, Gloria Baker's husband, acted as president of the debtor and attorney for the debtor, this court had denied the debtor's motion for leave to transfer the debtor's interest in the leasehold to Gloria Baker, who claimed to be the beneficial owner of the leasehold. This court ruled that since the lease was terminated, the debtor had nothing to transfer. Moreover, this court ruled that it would not permit a transfer without notice to all creditors because a debtor in possession could be compelled to assert the strong-arm powers made available under 11 U.S.C. § 544(a)(3).

■ The debtor argued that the asserted nominee relationship between Gloria Baker and the debtor could not be avoided under 11 U.S.C. § 544(a)(3) because the debtor did not transfer any property to Gloria Baker; she allegedly caused the title to the leasehold to be taken in the debtor's name as her nominee. This mistaken view of § 544(a)(3) overlooks the fact that this section applies not only to transfers made by the debtor, but also to "any *obligation incurred* by the debtor that is voidable" by a trustee acting as a hypothetical bona fide purchaser of real property. (Emphasis added). A debtor in possession or a trustee in bankruptcy could exercise the avoiding powers of a hypothetical bona fide purchaser of real estate to set aside the verbal nominee relationship, despite the debtor's alleged equitable duty to recognize the beneficial title claimed by Gloria Baker. The debtor's unrecorded agreement or obligation to Gloria Baker could be viewed as an "obligation incurred by the debtor that is voidable" within the meaning of 11 U.S.C. § 544(a). *See Abney v. Cox Enterprises (In re Fulton Air Service, Inc.),* 777 F.2d 1521 (11th Cir.1985) (unrecorded state tax liens were obligations which a trustee in bankruptcy, as a hypothetical bona fide

purchaser, may avoid); *U.S. v. Gleneagles Investment Co., Inc.,* 565 F.Supp. 556, 576 (D.M.D.Pa.1983) ("the guarantees are clearly 'obligations incurred' under the Act....").

As stated by Chief Judge Charles L. Brieant in his affirmance:

The primary purpose of § 544—to protect a bankrupt's creditors against secret liens—would be ill-served by honoring an unrecorded title claim of an insider of the Debtor. Creditors reasonably could have relied on the Debtor's title to the property in extending credit. The Debtor in possession, as trustee in bankruptcy, was under a duty to avoid the unrecorded nominee relationship or equitable interest and claim the $350,000.00. If it failed to do so, a creditor's committee or trustee, with court approval, would have been entitled to pursue this asset.

*In re Cohoes Industrial Terminal,* 70 B.R. at 223.

■ The Chapter 11 trustee retained Leon Baker, Gloria Baker's husband, as special counsel to object to LSA's claims upon his assertion that, for this purpose, Leon Baker held no interest adverse to the estate within the meaning of 11 U.S.C. § 327(e). Obviously, if Leon Baker succeeds in establishing that LSA has no claim against the debtor because the debtor is only a nominee for his wife, Gloria Baker, who was the beneficial owner of the leasehold, and, therefore, entitled to receive the $350,000 termination payment, this debtor and its other creditors will be affected adversely.

Accordingly, Leon Baker is disqualified from asserting this objection as special counsel for the Chapter 11 trustee. This second objection will be dismissed without prejudice to the Chapter 11 trustee's rights to reconsider whether or not he knowingly wishes to assert this type of kamikaze objection which may wipe out the estate's claim to LSA's $350,000 lease termination payment. Therefore, the court will only consider at this juncture the objection bottomed on the merger by judgment theory

which Leon Baker, as special counsel, advanced on behalf of the debtor.

## MERGER BY JUDGMENT OR CLAIM PRECLUSION

Pursuant to Article 32 of the lease, LSA had the right to terminate the lease with the debtor in exchange for the payment of $350,000 to the debtor as consideration for such termination. LSA gave notice to the debtor of its intention to terminate the lease effective February 25, 1985 and also tendered a check for $350,000. The debtor then took the position that LSA could not terminate the lease because Article 32 violated the rule against perpetuities. This position was asserted by Gloria Baker, the wife of Leon Baker, the debtor's president, in an action which she commenced in the New York State Supreme Court on February 8, 1985. This action was dismissed because the state court ruled that Gloria Baker had no standing to sue in view of the fact that the lessee under the lease was the debtor and not Gloria Baker. LSA, in turn, commenced its action against the debtor in the New York Supreme Court on February 13, 1985, seeking a declaratory judgment that the termination clause in Article 32 of the lease was valid and enforceable and for an order directing the debtor to deliver to it possession of the premises. On April 18, 1985, LSA obtained this relief pursuant to an order and subsequent judgment which was entered by default in the New York Supreme Court. It is this judgment which the debtor now contends precludes LSA from claiming (1) contingent rent through February 25, 1985; (2) damages caused by the debtor's waste or failure to maintain the leased premises through February 25, 1985, and (3) compensation for the debtor's use and occupancy of the leased premises after LSA's termination of the lease, effective February 25, 1985.

The concept of merger by judgment or claim preclusion, is bottomed on the theory that there should not be more than a single suit for a single cause of action so as to prevent harassment and wasteful dissipation of judicial energies. This doctrine is actually the application of the principle of *res judicata*. *See* 5 New York Civil Practice, Weinstein, Korn & Miller, ¶ 5011.15. The rule was stated in *Alyeska Pipeline Service Company v. U.S.*, 231 Ct.Cl. 540, 688 F.2d 765, 769 (1982), *cert. den.* 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983) as follows:

> In general, a final judgment on the merits of a claim (i.e., cause of action) precludes the same plaintiff from bringing against the same defendant a subsequent action on the same claim, or any part of the claim that was or reasonably could have been, brought in the initial action. *Container Transportation International, Inc. v. United States*, 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972) (and cases cited there); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §§ 18, 19 (1980) [hereinafter cited as RESTATEMENT]. Simply, a plaintiff may not split his claim or cause of action between different suits. *Everett Plywood Corp. v. United States*, 206 Ct.Cl. 244, 252, 512 F.2d 1082, 1087 (1975).

The definition of what constitutes the same cause of action invokes a pragmatic standard to be applied to a common nucleus of operative facts which may cause a number of harms or invade a number of interests and may give rise to several theories for relief, although there is but one transaction. This point is expressed in RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1980) as follows:

> § 24. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"
>
> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings con-

stitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*See also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice And Procedure § 4407 (1981).

█ In the instant case, the transaction which gave rise to LSA's state court cause of action consisted of LSA's notice of termination of the debtor's lease and the debtor's rejoinder that the termination was ineffective because the termination clause in Article 32 of the lease was invalid in that it violated the rule against perpetuities. The New York Supreme Court default judgment in LSA's favor established that the lease was effectively terminated by LSA as of February 25, 1985 and that LSA was thereafter entitled to possession of the premises.

LSA's claims for contingent rent and waste through February 25, 1985, or its claim for the debtor's alleged improper use and occupancy of the premises after February 25, 1985, were all separate causes of action which were not implicated in LSA's suit for a declaratory judgment that the lease was terminated effective February 25, 1985. In seeking to sustain its right to terminate the lease LSA was not obliged to allege also its pre-termination claims for additional rent and waste or its post-termination claim for use and occupancy at the peril of thereafter being precluded from asserting these claims. There was no splitting of a cause of action because these claims are separate and independent of LSA's rights under the termination clause in Article 32 of the lease. They were not outcome-determinative in LSA's state court action to sustain its termination of the lease nor were the facts concerning these claims related in any way to the transaction out of which the state court action arose. Therefore, the debtor may not now object to these claims, as set forth in LSA's proof of claim, on the alleged theory that they were merged into LSA's judgment and are barred by that judgment.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. The debtor's first objection, that all of LSA's claims arising out of the lease were merged into the default judgment which upheld LSA's termination of the lease, is dismissed. LSA's claims for pre-termination contingent rent and waste and its post-termination claim for use and occupancy are not barred by the state court judgment which sustained LSA's termination of the lease in question, nor do these claims reflect a splitting of the cause of action which was the subject of the state court judgment.

3. Leon Baker, as special counsel for the Chapter 11 trustee, is disqualified from asserting the debtor's second objection that it is not liable to LSA because the debtor was merely the agent for Gloria Baker and held title to the leasehold as her nominee. The debtor's objection on this ground is dismissed, without prejudice to the Chapter 11 trustee's right to reassert this objection later if he really believes that it would be in the best interest of the estate to do so, unencumbered by Leon Baker's patent conflict of interest as to this issue.

SETTLE ORDER on notice in accordance with the foregoing rulings.