**In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.**

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court, S.D. New York.

Aug. 11, 1989.

Leon C. Baker, White Plains, N.Y., Christy & Viener, New York City, for debtor and defendants.

Zubres, D'Agostino & Hoblock, P.C., Albany, N.Y., for Latham Sparrowbush Associates.

## DECISION ON MOTION FOR RULE 9011 SANCTIONS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Latham Sparrowbush Associates ("LSA"), a former lessor and creditor of the debtor which has since been paid in full, seeks an order pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927 for sanctions and attorneys' fees against Leon C. Baker for bad faith litigation. Mr. Baker occupied various roles in this case, including unretained attorney for the debtor, president and sole shareholder of the debtor, general partner of the debtor's lessor involving an industrial terminal in Cohoes, New York, and principal with his wife, Gloria Baker, of the mortgagee, Coleman Capital Corporation Employee's Profit Sharing Trust ("Coleman Capital") which held the mortgage on the industrial terminal which the debtor operated in Cohoes, New York. Additionally, Mr. Baker and his wife, Gloria, asserted claims against the debtor as creditors. Significantly, Leon and Gloria Baker also claimed that Gloria Baker was the beneficial owner of a garden apartment complex in Sparrowbush, New York and that the debtor corporation only held nominal title to the leasehold for the garden apartment buildings pursuant to an unrecorded verbal transaction between Gloria Baker and the corporate debtor, Cohoes Industrial Terminal, Inc. Accordingly, the Bakers asserted that LSA's prepetition exercise of a termination option in the lease for the garden apartment buildings was ineffective because Gloria Baker never received notice of such termination and she

was really the tenant in possession of the garden apartment buildings.

The debtor formerly operated two leasehold interests; a garden apartment complex in Sparrowbush, New York and an industrial terminal in Cohoes, New York. LSA, as lessor of the garden apartment buildings in Sparrowbush, New York originally had no interest in the debtor's other lease which involved the industrial terminal in Cohoes, New York. The lessor of the industrial terminal was Cohoes Associates, a limited partnership consisting of Leon Baker as the general partner and various limited partners who ultimately sold their interests to Leon Baker. The industrial terminal had various subtenants who occupied the terminal. The mortgagee of the terminal was Coleman Capital, which was owned by Leon and Gloria Baker.

LSA's involvement in this case as a creditor, and the reason why the debtor originally filed a Chapter 11 petition with this court, stems from a conflict arising out of a termination option in the lease for the garden apartment buildings in Sparrowbush, New York. Pursuant to Article 32 of the lease, LSA had the right to terminate the lease for the garden apartment buildings in exchange for the payment of $350,000.00 to the lessee as consideration for such termination.

The Sparrowbush lease had originally been entered into in 1968 between LSA, as lessor, and Shaker Estates, Inc., as lessee. On December 31, 1973, Shaker Estates, Inc. assigned its rights under the lease to the debtor, Cohoes Industrial Terminal, Inc. On August 27, 1975, the debtor and LSA entered into an Amendment of Lease which involved a settlement of a rent default. On December 26, 1984, LSA gave notice of its exercise of a termination option in Article 32 of the lease, terminating the lease effective 60 days from the notice date. Thereafter, on January 12, 1985, Gloria Baker commenced a declaratory action in the state court in New York seeking various relief including that the termination clause was invalid because the termination option violated the rule against perpetuities. LSA cross moved to dismiss the complaint on the ground that Gloria Baker lacked standing to sue because she was not in privity with LSA and had no connection with the lease. By a decision entered April 30, 1985, and an order dated June 30, 1985, Justice Anthony Cerrato of the New York Supreme Court, Westchester County, dismissed Gloria Baker's complaint, holding that she had no standing to question the validity of the termination clause in the lease because she was a legal outsider to it. The debtor's motion to reargue was denied.

On February 11, 1985, LSA commenced an action against the debtor to reacquire the garden apartment buildings in Sparrowbush, New York. LSA's action was commenced by the service of two copies of a summons and complaint on the Secretary of State pursuant to N.Y.B.C.L. Section 306. The debtor had designated an attorney as its agent who apparently died prior to the service of the summons and complaint with the result that the debtor never received that copy of the papers although the debtor was aware of the action because Leon Baker included a copy of the LSA papers as an exhibit in the case which he commenced against LSA on behalf of Gloria Baker. Nonetheless, on February 25, 1985, the 60 days notice period given by LSA to terminate the lease ran its course. On March 15, 1985, the debtor defaulted in answering LSA's complaint. On April 19, 1985, Justice Lawrence E. Kahn, of the New York Supreme Court, Albany County, entered an order sustaining the validity of the termination clause in the face of the rule against perpetuities objection, directed the debtor to deliver possession of the Sparrowbush garden apartment buildings to LSA, and ordered that upon delivery of possession LSA should tender to the debtor a certified check for $350,000.00. The debtor's motion to vacate the order was denied by Justice Kahn on May 20, 1985.

On October 10, 1985, a unanimous Appellate Division affirmed Justice Kahn's denial of the motion to vacate the default judgment. On December 20, 1985, the Appellate Division entered an order denying the debtor permission to appeal to the Court of Appeals. On February 13, 1986, the New

York Court of Appeals denied the debtor's appeal from the order denying leave to appeal. On March 27, 1984, the New York Court of Appeals denied the debtor's motion to reargue its appeal. Immediately thereafter, on that same day, Mr. Justice Kahn entered an order appointing a post-judgment receiver to collect rents and ordering that the receiver take possession of the Sparrowbush premises; that the tenants surrender possession and among other things, enjoined the debtor from collecting rents and interfering with the receiver's possession. On April 24, 1986, the Appellate Division entered an order denying the debtor's motion for a stay pending appeal.

### The Chapter 11 Case

After having seemingly exhausted the state court remedies with respect to the Sparrowbush lease and control of this property by the debtor having been extinguished with the appointment of the receiver, on April 28, 1986, the debtor filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code. When the debtor filed its Chapter 11 petition, its only uncontested asset was its leasehold interest in the industrial terminal in Cohoes, New York, which was owned by the Baker-controlled partnership known as Cohoes Associates, subject to a mortgage held by another Baker-controlled entity known as Coleman Capital. There was no need for Chapter 11 reorganization as to the industrial terminal lease because the landlord and the mortgagee were Baker-controlled entities. The debtor's schedules listed only two unsecured creditors, other than LSA, who were unrelated to the Bakers. Approximately $15,704.00 was owed to Niagara Mohawk Gas & Electric Company and $1,417.00 was owed to Blue Shield. There were no secured creditors listed in the debtor's schedules. The admitted reason for the Chapter 11 filing was the fact that the debtor desired to prevent the loss of the leased garden apartment buildings in Sparrowbush, New York to LSA as a result of LSA's prepetition termination of the lease validated by the default judgment which the appellate courts in New York would not vacate.

On June 12, 1986, this court ruled that the state court default order in favor of LSA was final and *res judicata* as to the termination. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y. 1986), *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), *aff'd*, No. 87–5004 (2nd Cir. Sept. 18, 1987). Therefore, the automatic stay imposed under Title 11 U.S.C. Section 362(a) did not bar LSA from enforcing its right to possession because the Sparrowbush lease was not property of the estate when the Chapter 11 petition was filed.

On October 10, 1986, this court granted the United States trustee's motion for the appointment of a Chapter 11 trustee because of the conflicts of interest created by the various Baker-controlled entities and because the debtor failed to file proper schedules of assets and liabilities. Additionally, the debtor did not file accurate monthly operating statements and did not pay post-petition rent and mortgage charges with respect to the industrial terminal in Cohoes, New York to the Baker-controlled landlord and mortgagee. Moreover, there was no forward movement after the filing of the Chapter 11 petition and no plan of reorganization. Therefore, a Chapter 11 trustee was required.

This court then rejected the United States, trustee's alternative argument for a conversion of the case because a liquidation of the debtor at that time "would simply enable the debtor's principals Leon and Gloria Baker, in their roles as insider secured claimholders, to reacquire the leased premises (the industrial terminal) upon foreclosure and to form a new corporate enterprise to lease the industrial complex which they own, free from the unsecured claims which are now asserted against this debtor." *In re Cohoes Industrial Terminal, Inc.*, 65 B.R. 918 at 922 (Bankr.S.D.N.Y.1986).

The foregoing language was prophetic because after the appointment of a Chapter 11 trustee, Leon Baker showed that the preservation of the industrial terminal lease was not the reason for the Chapter 11 petition and that a Chapter 11 case was not required for the purpose of continuing the

business operations at the terminal, especially since he already controlled the terminal's landlord and mortgagee. Mr. Baker simply caused the Baker-controlled landlord to cancel the debtor's lease at the terminal, after which he formed and installed another Baker-controlled tenant on the premises, known as Cohoes Terminal, Inc. A $500,000.00 settlement fund which one of the terminal's subtenants paid to the debtor to be released from an existing lease was paid by the debtor to the Baker-controlled mortgagee pursuant to an alleged assignment of rent clause. Additionally, before the Chapter 11 trustee took over the debtor's affairs, the debtor prepaid its winter utility bill to Niagara Mohawk Gas & Electric Company and returned to the subtenants prepaid rent which it held for the subtenants of the newly installed Baker-controlled entity which replaced the debtor.

In view of the fact that the preservation of the industrial terminal lease in Cohoes, New York was not the stimulus for the Chapter 11 petition, it follows that a Chapter 11 reorganization was never intended because the debtor's other leasehold interest, the garden apartment buildings in Sparrowbush, New York, was no longer property of the estate. The debtor's interest in this leasehold was terminated prepetition by LSA's exercise of the termination clause in the lease, which termination was sustained by the state courts before the Chapter 11 case was commenced.

The main reason for the commencement of the Chapter 11 case was not due to any claims or potential liabilities which the debtor faced. On the contrary, the debtor did not wish to accept the $350,000.00 termination payment which LSA was obligated to pay the debtor as consideration for such termination. The debtor simply hoped to frustrate LSA's right to regain possession of the garden apartment buildings upon payment of $350,000.00 for the option to terminate the lease.

Hence, despite the fact that the state courts had already sustained LSA's termination of the Sparrowbush lease and had ruled that Gloria Baker was an outsider to the lease and had no standing to argue that the termination clause violated the rule against perpetuities, the debtor, nonetheless, filed a Chapter 11 petition for the purpose of continuing its litigation with LSA in order to prevent LSA from terminating the Sparrowbush lease by paying the $350,000.00 termination fee.

LSA's right to enforce its possessory interest in the Sparrowbush lease, notwithstanding the automatic stay, was established early in this case when this court ruled that the prepetition default judgment was *res judicata* as to the termination of the debtor's leasehold interest in the Sparrowbush apartment buildings. At the same time, this court denied Gloria Baker's motion to permit the debtor to transfer its interest in the Sparrowbush lease to her as the verbal nominee and beneficial owner of the lease. This court ruled that as a result of the prepetition state court rulings, the debtor had no title interest in the Sparrowbush lease which could be transferred or abandoned, even if Gloria Baker could prove that she was the beneficial owner of the lease pursuant to an unrecorded verbal agreement between the debtor and herself. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. at 378. This court then refused to grant attorney's fees to LSA under Bankruptcy Rule 9011 because she did not prevail as to the constructive trust issue as to who was the beneficial owner because of insufficiency of proof and not because her claim was entirely without merit.

However, notwithstanding the affirmance of this ruling by the District Court and the Court of Appeals, Leon Baker again submitted this issue for litigation in response to a claim which LSA later filed for use and occupancy and for damages arising out of the debtor's failure to maintain the Sparrowbush premises as required under its lease. Leon Baker, as special counsel for the Chapter 11 trustee argued that the debtor was not liable to LSA under the lease because it was merely the nominee for Gloria Baker, and that she was the beneficial owner of the leasehold under an unrecorded equitable interest. This court ruled that Leon Baker was disqualified to assert this defense because of his conflicts of interest. However, the court noted that

this was a kamikaze defense which was not in the best interests of the estate. In exchange for this suicide defense, the debtor would relinquish its right to receive the $350,000.00 termination fund which LSA was obligated to pay to the estate. The court also ruled that LSA's claim for additional contingent rent and for damages for the debtor's failure to maintain the premises were not merged by judgment, nor required to be asserted in LSA's previous state court action for termination of the lease. Thus, there was no splitting of a cause of action. *In re Cohoes Industrial Terminal, Inc.,* 69 B.R. 717 (Bankr.S.D.N.Y.1987).

The debtor's motion for leave to appeal was denied by the District Court, which noted that LSA's claim for damages was not sufficiently related to the state court action for lease termination to constitute a split cause of action. *In re Cohoes Industrial Terminal, Inc.,* 75 B.R. 147 at 149 (S.D.N.Y.1987).

In order to induce the Chapter 11 trustee to assert the so-called kamikaze defense that Gloria Baker was the beneficial owner of the Sparrowbush lease and that her alleged ownership survived LSA' termination of the debtor's interest in the Sparrowbush lease, Leon Baker prepared an assignment by Gloria Baker to the debtor of the $350,-000.00 termination fund. Therefore, the Chapter 11 trustee would not lose this fund even if the trustee prevailed as to the kamikaze defense and established that Gloria Baker, and not the debtor, was the real lessee who was entitled to the $350,000.00 payment in the event that LSA had the right to exercise the termination clause. Accordingly, once again Leon Baker, as special counsel to the Chapter 11 trustee, attempted to establish the kamikaze defense that Gloria Baker, and not the debtor, was the equitable owner of the Sparrowbush lease. However, at the trial, LSA introduced into evidence a letter to LSA's attorney dated January 22, 1974, wherein Leon Baker disclaimed any personal liability on his part or that of Gloria Baker with respect to the Sparrowbush lease because, as he pointed out, the prior leasehold own-

er, Shaker Estates, had assigned the lease to the corporate debtor and not to an individual. It was clear from all the evidence that Gloria Baker was merely a phantom figure with respect to the Sparrowbush lease and that this defense could not be sustained, aside from the fact the debtor was precluded from raising this issue again by reason of *res judicata* and collateral estoppel. *In re Cohoes Industrial Terminal, Inc.,* 78 B.R. 681, 691 (Bankr.S.D.N.Y. 1987), *aff'd,* 87 Civ. 8919 (S.D.N.Y. May 2, 1988), *aff'd,* 863 F.2d 45 (2nd Cir.1988).

At the trial, involving the debtor's objection to LSA's total claim of over $2 million, LSA sustained its damage claim for additional contingent rent based on improper adjustment expenses for a total of $101,-144.00. Additionally, LSA was entitled to enforce a covenant in the lease for repairs and maintenance of the buildings in the sum of $735,915.00, together with reimbursement of $115.00 in costs and a $1,750.00 arbitration fee, for a total of $838,724.00. Ultimately, Gloria Baker paid this damage award to LSA in full and was subrogated to LSA's claim.

On December 17, 1987, this court entered an order converting the debtor's Chapter 11 case to Chapter 7 under the Bankruptcy Code for liquidation. This court's decision, dated March 14, 1988, which approved the trustee's election over the opposition of Leon Baker, *In re Cohoes Industrial Terminal, Inc.,* 83 B.R. 256 (Bankr.S.D.N.Y. 1988), was affirmed by the District Court, 90 B.R. 67 (S.D.N.Y.1988). At this juncture, apart from the lease termination payment that Gloria Baker assigned to the Chapter 11 trustee, there are no other tangible assets in this estate. The Sparrowbush lease was terminated before the Chapter 11 case was commenced and the industrial terminal lease in Cohoes, New York, was terminated by the Baker-controlled landlord, which thereafter installed another Baker-controlled entity as tenant in place of the debtor. Moreover, LSA has been paid in full by Gloria Baker and is no longer a creditor of this estate. Having paid LSA's claim, Gloria Baker is now subrogated to LSA's status as a creditor of the debtor.

### The Affirmative Defenses

Many of the esoteric and imaginative defenses which Leon Baker urged, as counsel and as special counsel, in opposition to LSA's pleadings were questionable, but not totally lacking in color. The rule against perpetuities evoked memories of law school lectures. The argument for lease reinstatement by LSA's acceptance of rent was unsupportable, but not totally devoid of merit. The unsuccessful defense as to LSA's damage claim, pitched to the statute of limitations, was factually flawed. The defenses of claim preclusion, splitting a cause of action, res judicata, merger by judgment and accord and satisfaction were unpersuasive, but not utterly lacking any legal substance. However, the kamikaze defense that Gloria Baker was the unrecorded equitable beneficiary of the debtor's lease and that the debtor was merely her nominee could not have been sustained after the prepetition state court rulings that Gloria Baker was an outsider and was not a disclosed principal.

Not only was this defense legally unsupportable, but it was factually without substance. The fact that the debtor's representatives maintained records in Gloria Baker's name, submitted checks for her signature and filed a certificate of doing business in her name merely reflected the point that at times Leon Baker wanted it to appear that Gloria Baker was the principal operator of the Sparrowbush buildings, perhaps to justify Federal income tax deductions. In any event, this appearance of active involvement on her part was rebutted by the actual facts. Not only was the leasehold title put in the name of the debtor corporation to avoid personal liability and for the alleged purpose of continuity, but in his letter dated January 22, 1974, Leon Baker expressly disclaimed any personal liability and corrected LSA's attorney's impression as to the Bakers' personal liability by pointedly noting that the leasehold title was taken in the name of the corporate debtor. Therefore, when he asserted the kamikaze defense, Leon Baker could not in good faith claim that Gloria Baker was personally liable as the disclosed principal and that the corporate debtor was merely her nominee.

### The Chapter 11 Filing

When the debtor filed its Chapter 11 petition there were no properties of the estate in jeopardy. Although the industrial terminal had a cash flow problem because it lost a substantial tenant, that tenant paid the debtor $500,000.00 as consideration for a termination of the lease. Moreover, the terminal was owned by a Baker-controlled entity and the mortgage was held by another Baker-controlled entity. Thus, the debtor had no pressure from any creditor at the industrial terminal which would prompt the filing of a Chapter 11 petition. On the other hand, despite the fact that LSA tendered $350,000.00 to the debtor pursuant to the termination clause in the Sparrowbush lease, the debtor filed its Chapter 11 petition in order to try to prevent LSA from acquiring possession of the premises after the state courts sustained the default judgment terminating the lease and awarding possession to LSA. Nonetheless, there was no way that a bankruptcy court could reverse LSA's prepetition state court judgment which was final and from which the highest court of the state refused to entertain any appeal. Because the terminated lease was no longer property of the estate, the debtor's Chapter 11 petition, which was filed for the purpose of preventing LSA from taking possession of this nonestate property was unquestionably frivolous and in bad faith.

### Sanctions

The imposition of sanctions in this converted Chapter 7 case is warranted for two reasons. First, there was a filing of a frivolous Chapter 11 petition in order to save a lease which was no longer property of the estate because of a final state court judgment. In addition, there was a reassertion of the kamikaze defense that Gloria Baker was the beneficial owner of the Sparrowbush lease after this court warned the Chapter 11 trustee and its special counsel, Leon Baker, that the defense lacked substance because of previous rulings by state courts and this court. Both the filing

of the Chapter 11 petition and the reassertion of the kamikaze defense were frivolous filings which were filed for an improper purpose because they were not well grounded in law nor warranted by existing law or fact.

## Discussion

Bankruptcy Rule 9011 tracks F.R.C.P. 11, so that an attorney signing any papers filed in bankruptcy cases which must be signed by an attorney of record in the attorney's individual name thereby warrants that the information contained in the papers is well grounded in fact, that it is warranted by existing law or a good faith argument for an extension, modification or reversal of existing law, and that it is not filed for an improper purpose. Breach of this warranty or representation gives rise to mandatory sanctions against the represented party, the attorney, or both. The standard imposing sanctions is an objective one of reasonableness under the circumstances. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir.1988), *cert. granted sub nom. Pavelic & Leflore v. Marvel Entertainment Group*, —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed. 179 (1989); *Motown Productions, Inc. v. Cacomm, Inc.*, 849 F.2d 781 (2d Cir.1988) (not every losing argument warrants the imposition of sanctions).

The Advisory Committee Note to the 1983 amendments to Rule 11 makes it clear that the major purposes were the deterrence of dilatory or abusive trial tactics and the streamlining of litigation by lessening frivolous claims or defenses and to deter costly meritless maneuvers.

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

97 F.R.D. 165, 199 (1983).

Thus, courts will not hold an attorney to a standard measured by what the court later decides, but should look at the situation which existed when the papers were filed. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986).

In addition to the objective standard under F.R.C.P. 11, as adopted by Bankruptcy Rule 9011, a subjective standard of bad faith is expressed under 28 U.S.C. § 1927 which imposes liability for excessive costs incurred due to the misconduct of an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." Such attorney "may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *Id.* As stated by the Second Circuit Court of Appeals;

> an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay ... [W]e hold today that an award made under § 1927 must be supported by a finding of bad faith ...

*Oliveri v. Thompson*, 803 F.2d at 1273.

While the key to F.R.C.P. 11 and Bankruptcy Rule 9011 is the certification, 28 U.S.C. § 1927 imposes a continuing prohibition against meritless, dilatory tactics. *Oliveri v. Thompson*, 803 F.2d at 1274.

In *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985), a Chapter 11 petition was filed not by a desire or need for reorganization, but simply to stave off a sheriff's sale on the creditor's state court judgment so that the debtor could obtain a hearing on a setoff claim to reduce the debtor's obligation. Sanctions were imposed because the controversy did not involve any other creditor of the debtor or a need for reorganization. The Third Circuit noted that an attempt to stop a sheriff's sale if undertaken pursuant to a legitimate effort of reorganization is not

reprehensible and is in accord with the aim of the Bankruptcy Code to give the debtor "breathing room" to facilitate reorganization.

Similarly, in *In re King*, 83 B.R. 843 (Bankr.M.D.Ga.1988), the reimbursement of attorney's fees and expenses was imposed on a Chapter 11 debtor and its president as sanctions for having filed a Chapter 11 petition in order to delay the trial of a state court case, without any intent to achieve a Chapter 11 reorganization. Bad faith sanctions were also imposed in *In re French Gardens, Ltd.*, 58 B.R. 959 (Bankr. S.D.Tex.1986), where a Chapter 11 petition was filed by an apartment complex solely to forestall a secured creditor from exercising foreclosure rights, without any intent on the part of the debtor of effecting a reorganization. The debtor and its attorney abused the judicial process and acted in bad faith, thereby causing the secured creditor to incur excess expenses and attorney's fees in violation of 28 U.S.C. § 1927 and Bankruptcy Rule 9011.

A recent case with a strikingly similar factual situation also involved the imposition of sanctions for the filing of a Chapter 11 petition for an improper purpose. In *In re Cedar Falls Hotel Properties Limited Partnership*, 102 B.R. 1009 (Bankr.N.D. Iowa 1989), a single asset limited partnership operating a motel, with relatively small unsecured debt was caused to file a Chapter 11 petition by its general partner after a state court judgment of foreclosure was entered and a state receiver appointed. The court found that the Chapter 11 petition "was not filed with the legitimate intent of reorganizing Debtor's business, but rather for the purpose of frustrating and delaying the legitimate rights of creditors to proceed to foreclosure and realize their security." Therefore, the court concluded that the Chapter 11 petition was filed in bad faith in order to oust the state court receiver from possession and to reinstate the debtor on the premises. The secured creditor sought to recover attorneys' fees, together with expenses. The debtor retaliated with an application for sanctions on the ground that the creditor's motion for sanctions was in bad faith. The court was

satisfied that the debtor had no legitimate intention of attempting a reorganization and concluded that Bankruptcy Rule 9011 had been violated. However, the court concluded that imposing sanctions against the debtor would have little deterrent effect because the debtor had no assets remaining and would not file another bankruptcy petition. Accordingly, the court imposed sanctions against the debtor's controlling partner and reprimanded its attorneys.

Sanctions in the amount of $40,860.00 were imposed upon the debtor's attorneys for a bad faith Chapter 11 filing intended to circumvent other court orders, including a state court order that served to divest the state court of jurisdiction over the mismanagement of the debtor in *In re Eighty South Lake, Inc.*, 63 B.R. 501 (Bankr.C.D. Cal.1986), *aff'd*, 81 B.R. 580 (B.A.P. 9th Cir.1987).

In the instant case, when the debtor's Chapter 11 petition was filed there were no creditors holding secured claims against the debtors assets; there were only three non-Baker entities holding unsecured claims, two of whom had relatively small claims arising out of the debtor's industrial terminal lease; the debtor's other leasehold interest, namely the Sparrowbush lease, had been terminated by a state court default judgment which the appellate courts refused to vacate; the Sparrowbush lease was no longer property of the estate as a result of LSA's exercise of the termination option; the debtor was entitled to receive from LSA $350,000.00 for such termination; the state courts had dismissed Gloria Baker's claim that she was the disclosed principal and that the debtor was merely her nominee pursuant to an unrecorded verbal arrangement between the debtor and herself with respect to the Sparrowbush lease; and the debtor's only remaining leasehold interest involving the industrial terminal in Cohoes, New York was not in jeopardy from any creditor pressure because its landlord and the landlord's mortgagee were Baker-controlled entities. In light of these facts, the filing of the debtor's Chapter 11 petition for the purpose of preventing the state court receiver in possession of the

Sparrowbush lease from reinstating LSA as landlord of the premises pursuant to the state court judgment was not warranted by existing law and was filed for an improper purpose because no reorganization was ever intended.

If the court were to accept Leon Baker's position that the debtor only held legal title to the Sparrowbush leasehold as Gloria Baker's nominee, and that she was the real tenant in possession as a disclosed principal with an equitable interest in the leasehold, it would follow that Chapter 11 reorganization could not possibly have affected her equitable interest or prevented the state court receiver from interfering with her beneficial possessory interest in the property. In accordance with 11 U.S.C. § 541(d), property which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, becomes property of the estate "only to the extent of the debtor's legal title to the property, *but not to the extent of any equitable interest in such property that the debtor does not hold."* (emphasis added) Therefore, even if a reorganization were really intended, which was not the case, the automatic stay could not in good faith be used, as the debtor attempted, to stay LSA and the state court receiver from delivering the beneficial possessory interest in the Sparrowbush lease to LSA. When a debtor holds only legal title to property the equitable interest in the property owned by the beneficiaries is unaffected by the filing of the bankruptcy petition. *Selby v. Ford Motor Co.*, 590 F.2d 642, 649 (6th Cir.1979); *In re Dunwell Heating & Air Conditioning Contractors Corp.*, 78 B.R. 667 (Bankr.E.D.N.Y.1987). Therefore, the debtor and its attorney, Leon Baker, patently used the Chapter 11 filing for an improper purpose when they commenced the Chapter 11 case in order to impose the automatic stay as a maneuver to delay LSA's re-entry rights while claiming that Gloria Baker was the beneficial owner of the Sparrowbush leasehold.

The bad faith litigation continued when Leon Baker, as special counsel to the Chapter 11 trustee, filed a defensive pleading to LSA's rent and damage claim, wherein they alleged that the debtor was not liable because Gloria Baker was the beneficial owner of the leasehold and that the debtor was a mere nominee holding bare legal title to the leasehold, without any responsibility for LSA's claim. This kamikaze defense had previously been rejected by the state courts and by this court when the debtor moved to transfer its leasehold interest to Gloria Baker, who was allegedly the proper party to defend this claim. The Chapter 11 trustee was hesitant to pursue this defense after this court warned that further litigation as to this issue could incur sanctions. However, the Chapter 11 trustee permitted Leon Baker, as special counsel to the Chapter 11 trustee, to further litigate this issue after Gloria Baker assigned to the debtor's estate her right to the $350,000.00 termination fund which LSA was required to pay as consideration for exercising the termination option. At this point, the kamikaze feature disappeared because the debtor's estate could not lose the $350,000.00 in the event this defense might be sustained. Therefore, LSA had to expend legal fees and expenses in defending against a pleading which was not well grounded in fact and law because it had previously been rejected by the state courts and by this court.

### The Debtor's Cross Motion for Sanction

The debtor seeks sanctions against LSA in the amount of $12,500.00 for attorney's fees incurred in defending against LSA's motion for sanctions. The debtor contends that there is no basis for LSA's motion for sanctions and, therefore, it violates Bankruptcy Rule 9011. The debtor argues that its Chapter 11 petition was filed in good faith and that this point is supported by the fact that this court refused to dismiss the Chapter 11 petition on motions by the United States trustee and LSA. This reasoning elides the fact that instead of dismissing the case, this court converted it for liquidation under Chapter 7 because there was no possibility for a Chapter 11 reorganization, whereas there were assets held by the Chapter 11 trustee, including the $350,-000.00 termination fund. Additionally, a

Chapter 7 trustee was needed in order to determine if the debtor and the Baker-controlled entities had misappropriated assets of the estate. This latter point involved the transfer to the Baker-controlled mortgagee of $500,000.00 paid by a sub-tenant at the industrial terminal as consideration for being released from its lease. Additionally, a Chapter 7 trustee had to investigate the debtor's return of prepaid rents to the subtenants at the industrial terminal and the debtor's prepayment of future utility bills just before the debtor's lease was terminated and another Baker-controlled entity was substituted as a tenant at the industrial terminal. All of these potential assets for the debtor would have been unavailable to LSA, as the debtor's largest creditor, if the Chapter 11 case had been dismissed.

In view of the fact that LSA is entitled to sanctions because the debtor filed a Chapter 11 petition for an improper purpose, and then compounded the bad faith conduct by reasserting a previously dismissed defense that Gloria Baker was the beneficial leasehold tenant, it follows that the debtor's cross motions for sanctions against LSA should be dismissed.

### Amount of Sanctions Against Leon Baker

As the attorney, special counsel, president, shareholder and controlling principal of the debtor, Leon Baker is the individual who must respond for the filing of a Chapter 11 petition for an improper purpose and for compounding the frivolous litigation by reasserting the groundless defense that Gloria Baker was the unrecorded beneficial owner of the Sparrowbush leasehold. As a result of this vexatious litigation, LSA was drawn into the Bankruptcy Court and required to expend fees for attorneys and incur expenses in order to reclaim possession of a leasehold interest which the state courts had conclusively ruled belonged to LSA before the bad faith Chapter 11 petition was filed.

In calculating its legal fees and expenses, LSA excludes the attorney's fees incurred in the preparation of its damage claim and the preparation of the hearing on the objection to LSA's claim. The sum total cost to LSA, other than the preparation of the proof of claim and the hearing on the claim, is set forth as 687.7 hours of attorney time and 28.4 hours of paralegal time, totalling $81,662.39, together with disbursements of $3,094.17. Additionally, LSA claims $2,700.00 for deposition time at 75% of actual billings. LSA also lists the time spent at the trial involving the debtor's objections to LSA's claim including litigating the reassertion of the kamikaze defense. This itemization is listed at 50% of actual cost. A final listing of attorney expenses and disbursements relates to the post-trial brief, including research and preparation time devoted to the kamikaze defense. This post-trial attorney expense is claimed at 75% of actual cost. The total amount claimed by LSA is $106,141.66 for legal fees and $4,145.16 for expenses, which includes long distance telephone, Federal Express, photocopying, filing fees and certifications of copies.

Although the amount of the attorney's fees incurred by LSA in litigating the bad faith Chapter 11 petition since it was filed on April 28, 1986 appears to be reasonable and necessary, consideration must be given to certain other factors which should be discounted. Even though LSA does not claim reimbursement for the legal fees paid in preparing and litigating its damage claim, it does seek to be reimbursed for legal services "rendered to LSA in connection with *all* papers and proceedings in this Chapter 11 proceedings, from the filing of the petition to the commencement of the hearing on the objection to LSA's claim ..." (emphasis added) There were four appeals in this case by the debtor to the District Court and two to the Second Circuit Court of Appeals. Of these appeals, two to the District Court and one to the Court of Appeals occurred before the hearing involving LSA's damage claim, during the period for which LSA seeks attorneys fees and expenses. The ongoing authority of a bankruptcy judge involving multiple and diverse legal questions and appeals in a single bankruptcy case which affords the bankruptcy judge an opportunity "to ob-

serve the parties' behavior and to discern a pattern of obstructionist, vexatious conduct", does not justify the bankruptcy court's award of fees for legal service performed in connection with frivolous litigation on appeal. *Glatzer v. Montmartco, Inc., (In re Emergency Beacon Corp.)*, 790 F.2d 285 at 288 (2nd Cir.1986). Additionally, the attorney time spent in supporting the United States trustee's motion for the appointment of a Chapter 11 trustee should not be counted because the United States trustee was sufficiently capable of pointing out all of the conflicts and ministerial omissions by the debtor which warranted such an appointment.

With the foregoing considerations in mind, it is concluded that Leon Baker should compensate LSA pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927 in the sum of $56,000.00 for that portion of the attorney's fees which LSA incurred as a result of the bad faith Chapter 11 filing and the obstructionist and vexatious litigation thereafter. Additionally, LSA should be reimbursed for its reasonably incurred expenses during this period in the sum of $4,145.16, for a total award of $60,145.16.

## Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The Chapter 11 petition which Leon Baker filed with this court on April 28, 1986 as attorney, president and shareholder of the debtor, Cohoes Industrial Terminal, Inc. was filed for an improper purpose and was not, after reasonable inquiry, grounded in fact and warranted by existing law, as required by Bankruptcy Rule 9011, which tracks F.R.C.P. 11.

3. The debtor's opposition to LSA's motion for relief from the automatic stay imposed under 11 U.S.C. § 362 on the ground that the debtor retained an interest in such leasehold after the state trial and appellate courts had sustained the state court judgment in favor of LSA which terminated the Sparrowbush lease and awarded possession to LSA, was frivolous, not well grounded in fact and law, and multiplied the proceedings in this court unreasonably and vexatiously, in violation of Bankruptcy Rule 9011, F.R.C.P 11 and 28 U.S.C. § 1927.

4. The motion which Leon Baker filed as attorney for Gloria Baker to have the debtor transfer the Sparrowbush lease to her because Gloria Baker was the beneficial possessory owner pursuant to an unrecorded verbal arrangement with the debtor was not utterly devoid of merit, but was denied as factually unsupportable.

5. The Chapter 11 trustee's motion objecting to LSA's proof of claim, which was asserted by Leon Baker, as special counsel to the Chapter 11 trustee, on the ground that the debtor cannot be liable to LSA because the debtor was merely the nominee and agent of Gloria Baker, who was a disclosed principal, was frivolous, not well grounded in fact and law, and multiplied the proceedings in this court unreasonably and vexatiously, in violation of Bankruptcy Rule 9011, F.R.C.P. 11 and 28 U.S.C. § 1927. The point was previously rejected by this court when the debtor sought to transfer its interest to Gloria Baker.

6. The affirmative defense which Leon Baker again interposed, as special counsel to the Chapter 11 trustee in opposition at the trial of LSA's damage claim on the ground that Gloria Baker, and not the debtor, was liable for the lessee's obligations under the Sparrowbush lease because she was the equitable owner of the lease under an unrecorded verbal arrangement with the debtor, was frivolous, not well grounded in fact and law, and multiplied the proceedings in this court unreasonably and vexatiously, in violation of Bankruptcy Rule 9011, F.R.C.P. 11 and 28 U.S.C. § 1927.

7. LSA is entitled to compensation for its attorneys fees and expenses from Leon Baker as sanctions for his violations of Bankruptcy Rule 9011, F.R.C.P 11 and 28 U.S.C. § 1927 in the amount of $60,145.16, as set forth above.

8. The debtor's cross motion for sanctions against LSA in the amount of $12,-

500.00 because LSA sought sanctions in this case, is denied.

Settle order on notice.