## In re COHOES INDUSTRIAL TERMINAL INC., Debtor.

### Bankruptcy No. 86 B 20201.

United States Bankruptcy Court,
S.D. New York.

April 27, 1990.

Leon C. Baker, White Plains, N.Y., for debtor.

Shea & Gould, New York City, for accountants.

## MEMORANDUM DECISION

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The debtor in possession has filed an objection to the final fee application of Mann, Judd & Landau ("the accountants") who were retained as accountants by the former Chapter 7 trustee of the debtor after the debtor had been converted from a trustee in possession case under Chapter 11 of the Bankruptcy Code to a liquidation case under Chapter 7 of the Bankruptcy Code, and before the debtor was put back in possession.

Originally, the debtor filed with this court a voluntary petition under Chapter 11 of the Bankruptcy Code on April 18, 1986. The debtor sought to preserve a lease for a garden apartments complex, which the debtor's lessor, Latham Sparrowbush Associates, had terminated before the bankruptcy case was commenced. During the course of the Chapter 11 case, a trustee was appointed pursuant to 11 U.S.C. § 1104. On December 17, 1987, this court converted the case for liquidation under Chapter 7 of the Bankruptcy Code. The Chapter 7 trustee in bankruptcy who was appointed in the superseded Chapter 7 case retained Mann, Judd & Landau as accountants in the case. One of the responsibilities of the accountants was to prepare the debtor's tax returns for the Chapter 7 trustee. They prepared federal and state income tax returns and corporate franchise tax returns for the fiscal years 1985, 1986 and 1987.

The Chapter 7 trustee had on hand when he was appointed a fund of over $400,000.00 representing principal and interest received from the debtor's lessor as consideration for the lessor's termination of the debtor's leasehold interest in a garden apartments complex in Sparrowbush, New York. The debtor's only other asset was a leasehold interest in an industrial terminal known as the Cohoes Industrial Terminal, located in Cohoes, New York. The debtor's lessor of the industrial terminal was Cohoes Associates, a partnership controlled by the debtor's sole shareholder, Leon Baker. Cohoes Associates in turn leased the Cohoes Industrial Terminal from the Coleman Capital Employee's Profit Sharing Trust, an entity whose trustees and beneficiaries were Leon Baker and his wife. The mortgagee of the premises was Leon Baker who was also the president of the debtor corporation, as well as the attorney for the debtor in possession in the Chapter 11 case before it was converted to Chapter 7. A more detailed description of the background facts may be found in *In re Cohoes Industrial Terminal, Inc.*, 103 B.R. 480 (Bankr.S.D.N.Y.1989).

After Mrs. Baker paid $832,724.00 in full satisfaction of the claim filed by Latham Sparrowbush Associates for damages with respect to the garden apartments complex, there were only two nominal creditors remaining other than Baker-related entities. Accordingly, the Chapter 7 trustee agreed to abandon the assets back to the debtor after the remaining two non-Baker creditors were paid in full. It was further agreed that Mr. Baker on behalf of the debtor would file the federal and state tax returns due for the period when the debtor acted as a debtor in possession during the Chapter 11 case.

The accountants for the Chapter 7 trustee had prepared tax returns for the Chapter 7 trustee which covered the Chapter 11 and Chapter 7 intervals. Mr. Baker strongly objected to the tax returns which the Chapter 7 trustee proposed to file for the period of the Chapter 11 operations. He contended that the accountants failed to take into consideration deductions which he would have taken and included as income for the debtor, items which he maintained should not have been attributed to the debtor. These matters became less significant when Mr. Baker filed his own tax returns for the former Chapter 11 debtor instead of those returns which had been prepared by the Chapter 7 trustee's accountants.

Mr. Baker now maintains that the fees which the Chapter 7 trustee paid to the accountants should be returned because their returns were of no benefit to the estate in that they magnified the Chapter 11 debtor's tax liabilities by producing a tax liability of over $500,000.00, whereas the tax returns which Mr. Baker filed actually produced a federal tax refund and may also produce a state tax refund. The Chapter 7 trustee's accountants contend that they would not have dared to file the type of tax returns which Mr. Baker filed for the Chapter 11 debtor and that according to their view of the applicable tax rules and regulations, the items of income which they attributed to the debtor and the deductions which they did not take were correct and not intended to penalize the debtor.

The main items in dispute relate to a $500,000.00 payment which the debtor received from a subtenant at the industrial terminal to cancel a lease; a $350,000.00 payment by Latham Sparrowbush Apartments for cancellation of the garden apartments lease and $45,000.00 treated as income to the debtor.

The accountants concluded that because the $500,000.00 rent cancellation payment was ultimately received by Mr. Baker in his capacity as mortgagee, pursuant to a rent assignment clause, there was no corresponding deduction available to the debtor for having turned over the $500,000.00 to Mr. Baker. Thus, the debtor had income of $500,000.00 for rents received, but did not have a $500,000.00 deduction for the rent payment which was kept by the debtor's shareholder and president, Mr. Baker, in his capacity as mortgagee. Although Mr. Baker may disagree with the accountants' refusal to take this $500,000.00 deduction, which apparently passed muster with the Internal Revenue Service in the returns

which he filed, it cannot be said that the accountants' refusal to accept Mr. Baker's tax approach was unreasonable or deliberately designed to maximize the debtor's tax liability in breach of their fiduciary duty to the debtor's estate. The accountants simply acted conservatively in filing returns which they believed satisfied their responsibility to the debtor's estate, to the Chapter 7 trustee and in satisfaction of their professional status as independent certified public accountants.

The $350,000.00 and $45,000.00 items were income receipts which the accountants believed were attributable to the debtor and which Mr. Baker disputed. The fact that Mr. Baker and the accountants disputed the tax treatment as to these items does not mean that the accountants acted in bad faith or were in breach of their fiduciary duty to the estate by not accepting Mr. Baker's tax strategy. There was no credible evidence that the accountants deliberately wanted to maximize the estate's tax liability, but only that the accountants viewed Mr. Baker's tax theories with suspicion. The accountants were also aware that the Chapter 7 trustee had commenced an adversary proceeding against Mr. Baker to recover funds which the Chapter 7 trustee claimed were assets of the estate which the trustee complained had been received by Mr. Baker as a result of alleged self-dealing and shifting of assets from one Baker-controlled entity to other Baker-controlled entities for the purpose of removing assets from the prior Chapter 11 estate. The trustee's adversary action to recover these funds lost its meaning after all of the debtor's creditors were paid by Mr. Baker. Thereafter, any action by the Chapter 7 trustee would only result in the recovery of assets from Mr. Baker solely for Mr. Baker's benefit, because he owned the debtor's equity interest, unburdened by any creditors.

Now that Mr. Baker has resumed control of the debtor, his position is adverse to the accountants who were retained by the former Chapter 7 trustee. While their accounting services for the former Chapter 7 trustee may not be viewed by Mr. Baker with the same appreciation as the former Chapter 7 trustee who retained the accountants while pursuing an adversary action against Mr. Baker, it does not follow that their services should be unrewarded because the former Chapter 7 trustee is no longer in control.

The basic issue is whether or not $22,358.00 which the Chapter 7 trustee paid to the accountants reflected the fair and reasonable value of their services to this estate, notwithstanding the fact that the tax returns which they prepared for the Chapter 7 trustee were not filed because Mr. Baker requested, and was granted, the right to file federal and state tax returns for the debtor's Chapter 11 operations.

The accountants' report that they spent 297.5 hours in providing accounting services for which they were paid $22,358.00, and for which they originally sought a fee of $34,218.50. They are now willing to accept $22,358.00 in full payment for their accounting services.

The United States trustee has reported that in reviewing the accountants' application he recognized that there may be reasonable differences of opinion regarding the quality of the accountants' work-product in light of the circumstances in this case. Accordingly, the United States trustee has obtained an agreement from the accountants to reduce their fee application from $34,318.50 to $22,358.00, which reduced sum the United States trustee recommends as reasonable under the circumstances.

Had the Bakers not paid the debtor's creditors in full from their personal resources, there would have been no reason to return the estate to the debtor. In such case, the Chapter 7 trustee would have pursued her adversary proceeding against Mr. Baker and the accountants' work-product would have been used to support the Chapter 7 trustee's position. The accountants performed accounting services beyond simply preparing tax returns for the debtor. They traced items through the debtor's accounting records, bank deposits, payroll accounts and assisted the Chapter 7 trustee's counsel in the course of the trustee's

adversary proceeding against Mr. Baker, with respect to self-dealing. Thus, it is understandable that Mr. Baker would not greatly value the accountants' work-product, which supported the former Chapter 7 trustee's proceeding against him.

Nonetheless, the accountants' application for compensation should not be rejected out of hand simply because the former Chapter 7 trustee's adversary proceeding is no longer pending and because Mr. Baker is now back in possession after all of the creditors were paid in full. The accountants performed valuable accounting services on behalf of the former Chapter 7 trustee's estate for which they are entitled to be compensated even though the Chapter 7 trustee is no longer functioning to support their application. Based on the facts in this case, the court finds that the reduced fee application of $22,358.00 reflects a fair and reasonable compensation for the accountants' services and is allowed.

SETTLE ORDER on notice.